746 So.2d 364 (1999)
William Glenn BOYD
v.
STATE.
CR-96-2295.
Court of Criminal Appeals of Alabama.
March 26, 1999.
Certiorari Denied October 22, 1999.
*373 Ruth E. Friedman, Montgomery, for appellant.
Bill Pryor, atty. gen., and J. Clayton Crenshaw, asst. atty. gen., for appellee.
Alabama Supreme Court 1981080.

On Application for Rehearing
COBB, Judge.
The unpublished memorandum of December 18, 1998, is withdrawn and the following opinion is substituted therefor.
On March 20, 1987, the appellant, William Glenn Boyd, was convicted for intentionally murdering Evelyn Blackmon and Fred Blackmon during the course of a robbery and kidnapping. By a vote of 7-5, the jury recommended that Boyd be sentenced to life in prison without the possibility of parole. On April 9, 1987, the trial court sentenced Boyd to death by electrocution. He appealed. This court affirmed Boyd's conviction and sentence. Boyd v. State, 542 So.2d 1247 (Ala.Cr.App.1988).[1] The Alabama Supreme Court affirmed the conviction and death sentence on February 24, 1989, Ex parte Boyd, 542 So.2d 1276 (Ala.1989), and on April 7, 1989, that Court denied rehearing. The United States Supreme Court denied Boyd's petition for certiorari review on October 2, 1989. Boyd v. Alabama, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989).
On July 5, 1990, Boyd, through counsel, filed a Rule 20, Ala.R.Crim.P.Temp., (now Rule 32, Ala.R.Crim.P.),[2] petition for postconviction relief, which he amended on November 30, 1990, and July 8, 1994. Among the claims made in the petition are substantive claims alleging errors in his trial and claims that his trial counsel and appellate counsel were ineffective. The State filed a response, arguing that all the issues, except those claiming ineffective assistance of counsel, were procedurally precluded. (Vol.1, C.R.52.)[3] On September 12, 1990, the circuit court summarily dismissed Boyd's petition by notation on the case action summary sheet. (Vol.1, C.R.2.) On October 15, 1990, Boyd petitioned for reconsideration of the dismissal of the petition. On October 16, 1990, the trial court reinstated the petition. Prior to Boyd's Rule 32 hearing, the circuit court summarily dismissed all of Boyd's grounds for relief, except those claims alleging ineffective assistance of trial counsel and appellate counsel, finding the dismissed claims to be precluded by Rule 32.2(a), and subject to summary dismissal pursuant to *374 Rule 32.7(d) Ala.R.Crim.P. (Vol. 3, C.R. 498; Vol. 16, R. 100.) Beginning on September 8, 1994, and continuing on October 6, 1994, October 7, 1994, and October 12, 1994, the circuit court conducted an evidentiary hearing at which the parties submitted oral testimony, exhibits, and depositions. At the end of the hearing, the circuit court instructed the parties to submit post-hearing briefs and proposed orders at a designated time after their receipt of the hearing transcript. However, the transcript was not timely prepared so the parties submitted their post-hearing briefs in September 1996, without the aid of a record. On July 25, 1997, the trial court denied the petition by written order, finding as follows:
"This matter comes before the Court on the Petitioner's Petition as amended pursuant to Rule 20 (Temporary) Rules of Criminal Procedure (now Rule 32, Alabama Rules of Criminal Procedure). This Court has previously dismissed all claims asserted by the Petitioner except the Petitioner's claims of ineffective assistance of counsel. The Court has heard and considered extensive testimony concerning the issues of ineffective assistance of counsel in this case, has given the parties an opportunity to present written arguments and caselaw and has reviewed the file and transcript of the original trial in this case.
"The Petitioner raises thirty (30) separate claims of ineffective assistance of counsel, both at the trial level and appellate level. Upon consideration of all of the above as it concerns and applies to each separate claim, this Court finds that the Petitioner has failed to show that his counsel's representation, both at the trial level and appellate level, fell below the objective standard of reasonableness or that there was a reasonable probability that but for counsel's unprofessional errors, if any, the outcome of his case would have been different, as required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
"It is therefore, ORDERED, ADJUDGED, AND DECREED that the Petitioner's request for relief pursuant to Rule 20 (now Rule 32) of the Alabama Rules of Criminal Procedure is hereby DENIED."
(Vol.5, C.R.944-45.)
Boyd appealed.
Boyd raises numerous issues on appeal, including substantive claims alleging errors in his trial and claims that his trial counsel and appellate counsel were ineffective. He also contends that the trial court erred in summarily dismissing claims that were properly presented in his Rule 32 petition.
In reviewing the trial court's denial of the appellant's petition, we are guided by the following principles.
"`"`[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence.' Thompson v. State, 615 So.2d 129 (Ala. Cr.App.1992)." Cade v. State, 629 So.2d 38, 41 (Ala.Cr.App.1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).'
"`In addition, "[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed." State v. Tarver, 629 So.2d 14, 19 (Ala.Cr.App. 1993).'"
Davis v. State, 720 So.2d 1006, 1012-13 (Ala.Cr.App.1998) (quoting Brownlee v. State, 666 So.2d 91, 93 (Ala.Cr.App.1995)).

I.
Boyd contends that the trial court erred in not finding that he was denied the effective assistance of his counsel in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of Alabama. "In cases in which, as here, trial counsel also served as appellate counsel, claims of ineffective *375 assistance of counsel are cognizable in a Rule 32, Ala.R.Crim. P., petition." Grayson v. State, 675 So.2d 516 (Ala.Cr. App.1995).
"`To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
"`"The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances.... `[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066."

"`Duren v. State, 590 So.2d 360, 362 (Ala.Cr.App.1990), aff'd, 590 So.2d 369 (Ala.1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
"`When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534 (Ala.Cr.App.1985). The burden is on the appellant to show that his counsel's conduct was deficient. Luke.'
"`"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
"`Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987).
"`Initially we must determine whether counsel's performance was deficient. We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. "Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable...." Lawley, 512 So.2d at 1372. This court must avoid using "hindsight" to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39 (Ala.Cr.App.1991).'
"Hallford v. State, 629 So.2d 6, 8-9 (Ala. Cr.App.1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
"`In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. [466 U.S.] at 697, *376 [104 S.Ct. 2052]. In fact, the Court explained that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. ...'
"Thomas v. State, 511 So.2d 248, 255 (Ala.Cr.App.1987).
"Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr. App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir.1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App.1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 1001, 102 S.Ct. 2286, 73 L.Ed.2d 1296 (1982)."
Davis v. State, 720 So.2d 1006 (Ala.Cr.App. 1998).

INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

I.A.[4]
Boyd contends that trial counsel failed to investigate his background, to conduct in-depth interviews with family members, or to otherwise develop mitigating evidence during the sentencing phase of the trial. According to Boyd, no investigation was conducted, no strategy devised, and virtually no inquiry made into his background and character in an effort to secure a sentence of life imprisonment without parole. Boyd claims that "[h]ad counsel made such efforts, they would have discovered a wealth of mitigating evidence." (Appellant's brief at p. 3.) Instead, according to Boyd, "[c]ounsel's sole effort was to ask Mr. Boyd's sister [Mrs. Cindy Pierce] to write down some facts about her brother.... Mrs. Pierce was then asked to read this statement to the jury." (Appellant's brief at pp. 2-3.) The record on direct appeal reflects that, in addition to Mrs. Pierce, the following witnesses testified during the sentencing phase: Geraldine Oliver, Boyd's mother; Herbert Hicks, Boyd's pastor; and Boyd.
"The principles regarding an attorney's duty to conduct an investigation into mitigating evidence have been summarized as follows:
"`An attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence. Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir.1986). First, it must be determined whether a reasonable investigation should have uncovered such mitigating evidence. If so, then a determination must be made whether the failure to put this evidence before the jury was a tactical choice by trial counsel. If so, such a choice must be given a strong presumption of correctness, and the inquiry is generally at an end. Funchess v. Wainwright, 772 F.2d 683, 689-90 (11th Cir.1985). If, however, the failure to present the mitigating evidence was an oversight, and not a tactical decision, then a harmlessness review must be made to determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, it must be determined that defendant suffered actual prejudice due *377 to the ineffectiveness of his trial counsel before relief will be granted.'
"Middleton v. Dugger, 849 F.2d 491, 493 (11th Cir.1988)."
Daniels v. State, 650 So.2d 544, 569 (Ala. Cr.App.1994).
Boyd claims that his trial counsel failed to present sufficient mitigating evidence to dissuade the trial court from overriding the jury's recommendation. At the Rule 32 hearing, Boyd presented a wealth of testimony characterizing his childhood as consisting of continual gross poverty; gross physical and emotional abuse; gross neglect; and various humiliations. These indignities were bestowed at the hands of a cruel and alcoholic father and stepfather; a mentally disturbed mother; and loving but severely alcoholic grandparents.
In addition to testimony from family and friends confirming Boyd's terrible childhood, Boyd's mitigation argument relies heavily on what experts would have said during the penalty phase of the trial had they been called as witnesses.[5]
At the Rule 32 hearing, Boyd called Jan Vogelsang, a clinical social worker with extensive expertise in victimization and trauma. She testified that in preparing a psychosocial assessment[6] on Boyd, she determined that Boyd came from "one of the worst family situations [she] ha[d] seen in terms of violence and neglect, alcoholism. It certainly rank[ed] up there in the top three or four worst cases." (Vol.17, R. 292-93.) However, when asked if Boyd made a choice to participate in the murders, Vogelsang testified that, "[Boyd] made a choice to go there, and once he was there, obviously things got out of control. Everyone has choices, but sometimes they make bad decisions and make bad choices, and in this case he certainly did that." (Vol. 17, R. page 279.)
Louis Mulray Tetlow, a licensed clinical psychologist, testified that Boyd "really does not have a major mental disorder." (Vol.19, R. 446.) He stated that Boyd was not good at looking ahead to the consequences of his behavior. (Vol.19, R. 450.) Tetlow stated that the murders in this case were not completely the result of Boyd's upbringing and that he did have some control over his actions in the situation. (Vol.20, R. 471.)
Karl Kirkland, the State's expert psychologist, testified that he agreed with Vogelsang's assessment that Boyd "clearly experienced abuse as he grew up." (Vol.20, R. 532.) However, Kirkland also testified that in his opinion, Boyd's having grown up in a terribly dysfunctional home did not cause him to murder Fred Blackmon and Evelyn Blackmon. (Vol.20, R. 526.) According to Kirkland, the murders were not the result of Boyd's having been subjected to parental alcohol abuse, physical abuse, poor parenting, poverty, or any combination of any of these events in his *378 childhood. It was Kirkland's conclusion that the murders were the result of an "individual making bad choices." (Vol.20, R. 535.)
We agree with the trial court's ruling that the appellant's trial counsel did not render ineffective assistance for failing to call these witnesses. "`There ha[s] never been a case where additional witnesses could not have been called.'" Fortenberry v. State, 659 So.2d 194, 199 (Ala.Cr.App. 1994) (quoting State v. Tarver, 629 So.2d 14, 21 (Ala.Cr.App.)) See also Lightbourne v. Dugger, 829 F.2d 1012, 1025-26 (11th Cir.1987) ("This court has specifically ruled that counsel's decision to rely on the defendant's testimony rather than offering the testimony of the defendant's family members to show a `turbulent family history' may be a reasonable strategic choice under the circumstances."). Moreover, "Failure to present psychiatric evidence in mitigation does not necessarily constitute ineffective assistance of counsel." Duren v. State, 590 So.2d 360, 365 (Ala.Cr.App. 1990).
"We cannot say that trial counsel's performance was deficient simply because he did not call every witnesses who conceivably may have been willing to testify at the sentencing phase of his trial. See State v. Tarver, 629 So.2d at 21. `In a challenge to the imposition of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether "the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."` Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir.1992), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993), quoted in Daniels, 650 So.2d at 568."
Bui v. State, 717 So.2d 6, 22 (Ala.Cr.App. 1997).
The trial court in this case chose to override the jury's recommendation because the aggravating circumstances greatly outweighed the mitigating circumstances. The following is an excerpt from the trial court's "Findings Concerning the Existence or Non-Existence of Aggravating Circumstance."
"By any standard acceptable to a civilized society, these crimes were extremely wicked and shockingly evil. They were perpetrated with a design to inflict a high degree of pain with utter indifference to the suffering of the victims. The Court recognizes that all Capital offenses are heinous, atrocious and cruel to some extent, but the degree of heinousness and cruelty in these offenses far exceeds that which is common to all Capital offenses.
". . . .
"After due consideration of all the matters that were presented to the Court during this hearing, both in mitigation and aggravation, the Court has carefully weighed the aggravating and mitigating circumstances which it finds to exist in this case, and has given consideration to the recommendation of the jury contained in its advisory verdict, and has taken into consideration all other matters that are properly before the Court, including the pre-sentence report and the arguments of the State and the Defendant. While the mitigating circumstances and the jury's recommendation of life without parole have weighed [heavily] in the Court's consideration, this Court does now find, and is convinced beyond a reasonable doubt and to a moral certainty that the aggravating circumstances of this horrible, cold-blooded crime as shown and brought before the Court far outweigh the mitigating circumstances shown to the Court, and that said aggravating circumstances outweigh the said mitigating circumstances in all regards and that they are sufficient in both quantity and quality to more than uphold a sentence of DEATH in this case."
Boyd v. State, 542 So.2d 1247, 1268-70 (Ala.Cr.App.1988) (Appendix to opinion).
*379 Boyd has not shown that the lack of psychological evidence or any other evidence at the sentencing phase prejudiced him. In fact, the evidence suggested that Boyd's childhood, although terrible, was not a factor in his committing two murders. Although family and friends testified at the Rule 32 hearing that Boyd had endured a terrible childhood and mental health experts testified in an effort to connect Boyd's childhood to his participation in the double murder, it was the conclusion of each expert that, at the time of the murders, Boyd knew right from wrong but made a choice to commit murder. We do not believe that this additional evidence would have shifted the balance between the aggravating circumstances and the mitigating circumstances and changed the outcome of the trial.
Only one of Boyd's three appointed counsel, Steve Levinson, testified at the Rule 32 hearing. He first stated that the defense did not plan a strategy for the sentencing hearing. He then testified that, upon a conviction, the defense strategy was to "try to mitigate the effect of the conviction through a family member's testimony; humanize the defendant, so to speak." (Vol.16, R. 132.) Counsel's tactical choices will not be second-guessed.[7] Moreover, Levinson's penalty phase strategy was successful; the jury recommended, by a vote of 7-5, that Boyd be sentenced to life imprisonment without parole.
Moreover, even if the alleged failure to present mitigating evidence was an oversight and not a tactical choice by counsel, it was harmless error. In overruling the jury's recommendation and sentencing Boyd to death, the trial court found that these crimes were "extremely wicked and shockingly evil." The trial court continued: "all Capital offenses are heinous atrocious and cruel to some extent, but the degree of heinousness and cruelty in these offenses far exceeds that which is common to all Capital offenses." Boyd, 542 So.2d at 1268. Although it was established at the Rule 32 hearing that Boyd had had a traumatic and unhappy childhood, there was also testimony that he knew right from wrong and that he had just made a bad decision in committing a double murder. Had the testimony presented at the Rule 32 hearing regarding Boyd's childhood been presented at the sentencing hearing it is highly unlikely that the trial court would have been persuaded to sentence Boyd differently.
We cannot say that Boyd's counsel's performance was deficient or that Boyd suffered prejudice because counsel failed to call additional mitigation witnesses at sentencing.

I.B. and V.
Boyd claims that his constitutional right to be free from double jeopardy was violated and that his trial counsel was ineffective for failing to assert that violation.
The substantive claim, which concerns a challenge to the indictment, is *380 procedurally barred because it was raised and addressed at trial and could have been raised on direct appeal. Rule 32.2(a)(2), and (a)(5), Ala.R.Crim.P. To the extent that the issue is presented as a double-jeopardy issue it is precluded because it could have been raised at trial and on appeal. Rules 32.2(a)(3) and (a)(5), Ala. R.Crim.P.
Boyd was tried and convicted of eight counts of capital murder for the deaths of two people. According to Boyd, "[t]he State's slicing up this offense into eight different counts deprived Mr. Boyd of his right to be free from double jeopardy under state and federal law." (Appellant's brief at p. 7.) He argues that "his trial counsel did not properly challenge this multiplicity of counts or the fact that Mr. Boyd was charged with separate crimes that were not even offenses themselves under Alabama law (e.g., `murder during a kidnapping with intent to terrorize')." Boyd also asserts that this issue was not presented on direct appeal.
According to Boyd,
"Had his trial counsel properly challenged this overcounting, Mr. Boyd would have gone to trial on a smaller number of legally-cognizable counts of murder. A jury faced with fewer counts of murder would be less likely to be overwhelmed by the charges or to see the defendant before them as a unrestrained killer. Not only might this have made individual jurors less prone to convict, but the jury would likely have recommended life-without-parole by a larger margin, which also would likely have had an effect on the judges's final sentence. But for counsel's failure, the results of Mr. Boyd's trial and sentencing would have been different."
(Appellant's brief at p. 8.)
Levinson testified at the Rule 32 hearing that Boyd's original appointed counsel, Levinson's predecessor, had filed a motion objecting to the indictment. That motion was denied. Levinson stated that when he was appointed to represent Boyd, he adopted and ratified prior counsel's motions. Therefore, trial counsel was not ineffective on this ground because trial counsel's performance was not deficient.
Moreover, we agree with the State's assertion that Hyde v. State, [Ms. CR-95-2036, January 30, 1998] ___ So.2d ___ (Ala.Cr.App.1998), is dispositive of this claim and shows that Boyd was not prejudiced by counsel's performance. In Hyde we stated:
"The United States Supreme Court has explained the purpose of the Double Jeopardy Clause as follows:
"`It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'

"North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). `The Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). In this case, the appellant was not prosecuted a second time for the same offense after an acquittal or after a conviction. Therefore, we must determine only whether the appellant is being punished multiple times for the same offense or is receiving a greater punishment than the legislature intended. Because this case involved the death penalty, the appellant cannot be punished twice for the same offense. He `has only been sentenced to die once, and indeed, can only be put to death once.' Ex parte McWilliams, 640 So.2d 1015, 1022 (Ala.1993). Furthermore, even if the appellant's right to be free from double jeopardy was violated by the two convictions for the murder of *381 a single witness, any error is harmless. If one conviction for the murder of a witness was void, the convictions for the other count of murder of a witness and for murder during a burglary would remain, and either conviction would be sufficient to support a death sentence. Id.

"The appellant's argument that, during the sentencing phase, the jurors might have been influenced by the number of convictions is refuted by the fact that the jury recommended a sentence of life imprisonment without parole. His argument that the trial court, in sentencing him, considered the fact that he had multiple convictions is also without merit. In its statement of the facts of the case, the trial court simply indicated that the appellant had been found guilty of two counts of murdering a witness. However, the trial court could not have, and in fact did not, consider these convictions as aggravating circumstances in determining the appellant's punishment. Therefore, there is no indication in the trial court's sentencing order that the trial court improperly considered the two convictions in sentencing the appellant to death by electrocution. For the foregoing reasons, the appellant's argument is without merit."
___ So.2d at ___. It is clear that the jury was not overwhelmed by the number of charges pending against Boyd because it returned a sentence recommendation of life imprisonment without parole. Moreover, the trial court's sentencing order did not reflect that the number of convictions were treated as an aggravating circumstance. Boyd can suffer only one punishment in this casehe can be put to death only one time.
Therefore, Boyd has not shown that counsel's performance was deficient or that he was prejudiced by counsel's performance. He has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made these objections in a different manner, the result of the trial would have been different.

I.C. and III.
Boyd claims that a complete transcript was not made of his triali.e., he complains that the following proceedings were not transcribed: voir dire examination, jury selection, arguments of counsel, and bench conferences. He also argues that his trial counsel was ineffective for failing to require that these proceedings be transcribed. He asserts that "[t]he failure to transcribe this record accurately prevented Mr. Boyd from receiving a full review of his case and has precluded him from adequately litigating such claims as the improper denial of strikes for cause and improper elimination of black veniremembers by the prosecution." (Appellant's brief at p. 42.) We construe this language as asserting that Boyd was prevented from receiving review of possible violations of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The substantive claim is procedurally barred because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3) and (5), Ala.R.Crim.P.
Boyd argues that because trial counsel failed to ensure that all aspects of his trial were transcribed, appellate counsel was unable to properly raise all issues concerning jury selection, the need for a change of venue, and jury strikes for cause, and the appellate courts were unable to review such issues. Because Boyd's trial counsel also served as his appellate counsel, counsel should have been aware of and alleged specific facts showing prejudice in his petition. However, Boyd's claim is speculative; he has not presented a single specific allegation suggesting that an incomplete record caused him to suffer prejudice. He has not argued that a single *382 black veniremember was struck. (Appellant does make this argument later; that argument is discussed in Parts I.D. and XII, infra.) Moreover, a court reporter has never been required to transcribe bench conferences or to record the striking of the jury unless requested to do so. Ex parte Harris, 632 So.2d 543, 545 (Ala. 1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995); Ex parte Land, 678 So.2d 224, 245 (Ala.1996). At the time of Boyd's March 1987 trial there was no requirement that the voir dire be transcribed. Section 12-17-275, Ala.Code 1975, did not require transcription of the voir dire. It was not until the implementation of Rule 19.4(a), Ala.R.Crim.P., effective January 1, 1991, that court reporters were required to record the voir dire examination of the jury.
Therefore, this issue has been insufficiently pleaded because the claim is based on mere allegations and conclusions. See Rule 32.3 and 32.6(b), Ala.R.Crim.P. Likewise, he has not established that trial counsel's performance was deficient or that he was prejudiced under Strickland. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.

I.D. and XII.
Boyd claims that the State exercised its peremptory challenges in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), and that his counsel failed to object.
The substantive claim is procedurally barred because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3) and (5), Ala. R.Crim. P.
Boyd contends that trial counsel did not object even though the state used five peremptory strikes to remove five of the six black veniremembers remaining in the pool after challenges for cause. According to Boyd, "the State of Alabama never provided race-neutral reasons for the striking of nearly all the African-Americans at Glenn Boyd's trial, and the court below did not require it to." (Appellant's brief at p. 59.)
Boyd is white. At the time of his March 1987 trial, Powers, which extended Batson to white defendants, had not been decided. "`We cannot say that counsel's performance was deficient for failing to forecast changes in the law.'" Davis v. State, 720 So.2d 1006, 1019-20 (Ala.Cr.App.1998) (quoting Hallford v. State, 629 So.2d 6, 11 (Ala.Cr.App.1992)). "[Boyd's] trial lawyers were not obliged to object based on possible future developments in the law in order to render effective assistance." Thompson v. State, 581 So.2d 1216, 1236 (Ala.Cr.App.1991) (citing Knight v. Dugger, 863 F.2d 705, 733 (11th Cir.1988); Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir.), modified on other ground, 833 F.2d 250 (11th Cir.1987), cert. denied, 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988); Thompson v. Wainwright, 787 F.2d 1447, 1459 n. 8 (11th Cir.1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987); and Funchess v. Wainwright, 772 F.2d 683, 691 (11th Cir. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1242, 89 L.Ed.2d 349 (1986)).
Therefore, Boyd has not shown that his counsel's performance was deficient or that he was prejudiced by his counsel's performance in this regard. Strickland, supra. He has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.

*383 I.E. and XVII.
Boyd claims that improper victim impact evidence was admitted and that it permeated the trial and sentencing. He also argues that his trial counsel was ineffective for allowing the admission of the evidence.
The substantive claim is procedurally barred because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.
Boyd contends that trial counsel erroneously allowed the trial court to consider a presentence report that included the explicit desire of the victims' families that Mr. Boyd be put to death. Boyd is referring to the following information contained in the presentence report:
"Victim Impact

"No Victim Impact Reports were mailed out in this case due to the short time between the jury verdict and date of sentencing. However, reports indicate that this was a heinous crime involving kidnapping, robbery, and capital murder. The death penalty was being sought for both Milstead and Boyd until Milstead elected to plead guilty and testify at the trial of Glenn Boyd.
"Both victims in this case were traumatized with a stick before being shot multiple times. Mrs. Blackmon was bound and gagged before being hit in the face and then shot. The families suffered great emotional stress over not only the abduction and murders of the Blackmons but also suffered additionally through the several additional days that it took to recover the bodies. Through decomposition of the bodies, identification then had to be made through dental and other medical records.
"The State contends that the family of both victims have suffered great mental and emotional distress at the hands of Glenn Boyd and Robert Milstead and they continue to seek the death penalty in this case."
(C.R. in direct appeal, p. 386.)
Trial counsel was not ineffective because the record from direct appeal indicates that there was no victim's impact statement. (direct appeal, C.R. 386.)
Moreover, Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), holds:
"If a State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated."
(overruling Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989)).[8]
Moreover, even if the information in the presentence report was considered to be an inadmissible victim's impact statement, we would not find that its admission prejudiced Boyd. This alleged victim impact statement consisted of 14 lines in a 7-page report. Additionally, the presentence report in this case was not presented to the jury, but was presented to the court. There was no indication in the trial court's sentencing order that it had considered the alleged victim's impact statement in sentencing Boyd. "[A] remand [for new sentencing] is not required in every death penalty case in which a victim impact statement appears in a presentence investigation report." Arthur v. State, 711 *384 So.2d 1031, 1092 (Ala.Cr.App.1996), aff'd, 711 So.2d 1097 (Ala.1997). Arthur was distinguished from Booth (which was subsequently overruled by Payne) as follows:
"`"[The appellant] next contends that the introduction of victim impact information at the sentencing phase of the trial violated the Eighth and Fourteenth Amendments to the United States Constitution.
"`"After the jury had rendered its advisory verdict in the sentencing phase of the trial, but before the trial court had pronounced sentence, a `presentence report' was filed by the Alabama Board of Pardons and Paroles. That report contained the following statement, which, [the appellant] contends, violates the Eighth and Fourteenth Amendments:
"`"`It is the belief of this officer that this offense has had a significant impact on the lifestyle of [the victim's wife]. She is now a single parent whose son has lost his father. She reports that her life has changed socially, emotionally, and that she is very paranoid, often nervous and very easily upset.'
"`". . . .
"`"... In the present case, the presentence report [containing the victim's impact information] was not presented to the jury, but was presented to the court. We also note that the victim impact information comprises only three sentences in a 36-page report that contains, among other things, details of the offense, mitigating and aggravating circumstances, [appellant's] criminal record, and [appellant's] personal history. We hold that the introduction of the presentence report containing the above statement was not error."'"
Arthur v. State, 711 So.2d at 1092 (quoting Ex parte Martin, 548 So.2d 496, 497-98 (Ala.), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989)); Ex parte Rieber, 663 So.2d 999 (Ala.1995). Boyd has not shown that trial counsel's failure to object constituted deficient performance or that he was prejudiced by counsel's performance. Nor has Boyd shown that counsel's performance was outside "the wide range of reasonable professional assistance" Strickland, 466 U.S. at 689, 104 S.Ct. 2052, or that there is a reasonable probability that, if trial counsel had made these objections in a different manner, the result of the trial would have been different.

I.F.
Boyd contends that trial counsel failed to prepare properly for pretrial hearings. According to Boyd, trial counsel did not effectively argue a motion for a change of venue, did not adequately pursue Boyd's right to individually sequestered voir dire, and did not sufficiently challenge the indictment. Boyd asserts that had trial counsel filed and pursued the appropriate pretrial motions the outcome of his trial would have been different. Boyd has presented no facts to support this claim. The claim is based on mere allegations and conclusions. Boyd has not met either the burden imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala. R.Crim.P. Likewise, Boyd has not shown that trial counsel's performance was deficient or that he was prejudiced by counsel's performance. He has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, 104 S.Ct. 2052, nor has he shown that there is a reasonable probability that, if trial counsel had made these objections in a different manner, the result of the trial would have been different.

I.G.
Boyd contends that trial counsel failed to adequately cross-examine and otherwise to impeach the credibility of key state witnesses, including Robert Milstead, Kenny Surrett, and the State's forensic experts. According to Boyd:

*385 "It was essential that Mr. Boyd's attorneys impeach the testimony of the state's main witness[es]. These included the forensic experts, who gave evidence regarding which wounds were caused by which firearms, what kind of wounds the victims suffered, and how long after the infliction of the wounds they died. Their testimony must have been used to support the trial court's finding of heinous, atrocious or cruel aggravating factor, and was also used by the prosecutor to bolster his theory to the jury on how the murders occurred. Also critical was Kenny Surrett, who testified that petitioner told him about the killings. But probably the most important testimony to impeach was that of codefendant Robert Milstead who was the sole eyewitness to (and participant in) the killings and who testified that petitioner was responsible for them."
(Appellant's brief at p. 12.) According to Boyd: "Defense cross-examination of Kenny Surrett only served to bolster his allegations that petitioner had said that he personally had been involved in the killings." (Appellant's brief at p. 14.) (Emphasis in appellant's brief.)
We agree with the State that Boyd's contentions concerning Surrett are unclear. The claim consists of conclusory allegations unsupported by facts sufficient to show that Boyd is entitled to any relief. Therefore, regarding Surrett, Boyd has not met either the burden imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. It follows that Boyd has not shown that his counsel's performance was deficient or that he was prejudiced by his counsel's performance in this regard. Strickland, supra.
Boyd argues that trial counsel failed to obtain experts in ballistics, firearms, or pathology to challenge the testimony of State's witnesses.
According to Boyd:
"Examination of [State] experts Higgins, Embry and Scheuerman failed to expose the inconsistencies in their testimony and the failure of their data to support their conclusions about the manner and time of death and the wounds allegedly inflicted on the victims."
(Appellant's brief at p. 14.)
Boyd asserts that a pathologist could have testified that much of Robert Milstead's testimony against Boyd was a lie. Boyd states that a pathologist could have testified that Milstead's,
"claim that Mrs. Blackmon's nose was `driven through her skull' was pure, sick hyperbole.... They could have established that Mr. Blackmon could not have been beaten with a stick as Mr. Milstead averred and that there was no evidence of strangulation.... They would have shown that much of the disfigurement seen in Mrs. Blackmon's body likely occurred after she died and her body was buffeted about in a barrel.... They would also have shown that Mrs. Blackmon most likely died quickly as a result of gunshot wounds and that there was no evidence for either victim of a lingering death.... All of this would have been critically important to establishing that Mr. Milstead was a liar and that while terribly wrong and tragic, the deaths of the Blackmons were not the gruesome, `heinous' spectacle the prosecution contended."
(Appellant's brief at p. 13.)
We do not agree with Boyd's assertion that testimony of a pathologist would have changed the outcome of the trial.[9] The *386 testimony given by the State's pathologist at trial essentially corroborated Milstead's version of the injuries sustained by the victims during the incident.
"Eugene Hunt Scheuerman testified that he was a medical examiner with the Department of Forensic Sciences in March of 1986. He stated that he was present when a black Cadillac Eldorado [automobile], tag number 11P-2864, was pulled from the Coosa River. The body of Fred Blackmon was removed from the trunk of this vehicle. Fred Blackmon was identified by the use of dental records.
"Scheuerman performed the autopsy on Fred Blackmon's body. Mr. Blackmon's clothing was soiled, muddy, and wet when it was removed from the trunk of the vehicle. There was a strip of white cloth on Mr. Blackmon's body which was used as a gag. Three holes were present on Mr. Blackmon's shirt. Two gunshot wounds were found on Mr. Blackmon's body. One of the gunshots penetrated the neck and passed into the chest cavity. The other gunshot penetrated the left side of the chest and passed through the heart. Both of these projectiles were recovered. The weapon which caused these gunshot wounds was fired at close range.
"Scheuerman also found minor blunt force injury to Mr. Blackmon's head. However, he determined Mr. Blackmon's cause of death to be the gunshot wounds to the chest and neck.
"Dr. Joseph Embry, a forensic pathologist with the Department of Forensic Sciences, testified that he was present when a 55-gallon barrel was pulled from the Coosa River. The body of Evelyn Blackmon was found inside the barrel. She was identified through the use of *387 head X-rays. Cinder blocks and bricks were also found in this barrel.
"Embry performed the autopsy on Mrs. Blackmon's body. There was a gag in Mrs. Blackmon's mouth and a piece of cloth tied around her ankles. Mrs. Blackmon sustained three gunshot wounds. One of the wounds was to the head and it was a superficial wound. Another one of the wounds was to the right side of the neck. The other wound was to the back. None of the projectiles which caused these wounds was found in Mrs. Blackmon's body.
"Mrs. Blackmon also sustained a laceration of her right forehead. She had numerous fractures to her nose and face. Mrs. Blackmon also had a chop wound in her lower back which penetrated her backbone. Mrs. Blackmon's cause of death was due to the two gunshot wounds to her neck and back."
Boyd v. State, 542 So.2d 1247, 1249-50 (Ala.Cr.App.1988).
Joseph Burton testified for the defense as an expert in forensic pathology at Boyd's Rule 32 hearing. The essence of Burton's testimony was that the victims sustained injuries that caused their deaths but those injuries were not as gruesome as Milstead described. Burton also testified that the absence of blood around the victims' wounds (other than the fatal gunshot wounds) suggested that the wounds were inflicted post-mortem. The intent of this testimony was to negate a finding that the murders were especially heinous, atrocious, or cruel. However, Burton conceded that the length of time that the victims' bodies were underwater made designation of the wounds as anti- or postmortem inconclusive. (Vol.18, R. 206.) Therefore, Burton's testimony did not discredit the testimony of the State's pathologist.
Additionally, we note that the trial court found the murders to be especially heinous, atrocious, and cruel not only because of the severe physical pain and suffering sustained by the victims prior to their death, but also because of the mental suffering inflicted before they were killed. Boyd came into the victims' home and told them he was going to kill their daughter (his ex-girlfriend), he robbed them, he kidnapped them at gunpoint, and he bound, gagged, and blindfolded them. He took them to a secluded area where they begged for their lives. Mrs. Blackmon was killed first and Mr. Blackmon continued to beg for his life. After disposing of the bodies in the river, Boyd bragged about the killings and about how coldblooded he was. Boyd v. State, 542 So.2d 1247, 1268 (Ala.Cr.App.1988)(Appendix to the opinion). The absence of physical suffering by the victims could not mean that this crime was not especially heinous, atrocious, and cruel.
According to Boyd, a firearms or ballistics expert could have impeached Milstead's version of who shot the victims and could have made a "huge difference in confronting the evidence against Mr. Boyd for both aspects of the trial." (Appellant's brief at p. 13.)(Emphasis in appellant's brief.) According to Boyd, an expert would have shown that it was far more likely that both murders were committed with Milstead's gun. It was Milstead's testimony at trial that Boyd took Milstead's gun and shot the victims. See Boyd v. State, 542 So.2d 1247, 1250 (Ala. Cr.App.1988). The testimony of a ballistics expert would not resolve who pulled the trigger. Therefore, we fail to see how a ballistics expert could have impeached Milstead's testimony regarding who shot the victims.
Boyd has not met either the burden of pleading imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. Therefore, Boyd has not shown that his counsel's performance was deficient or that he was prejudiced by his counsel's performance in this regard. Strickland, supra.
Regarding the impeachment of Milstead, Boyd contends:

*388 "While forced to repeat only that he was saving himself from the electric chair, the defense could also have truly impeached the codefendant's testimony with this evidence.... Indeed, the trial testimony itself was riddled with statements unsupported by and contradicted by the state's physical evidence; was internally inconsistent; and contradicted numerous elements of the statements previously given. Milstead changed his testimony about whether he had a gun...; whether he knew the victims ...; what money was stolen and what happened to it.... He added commentary on the stand that had never been mentioned in any prior statement.... His testimony about how the victims were killed and where he allegedly was at the time was begging for impeachment. Moreover, had they adequately prepared, counsel could have challenged Milstead with the very contradictory and wholly inconsistent statements he had given the police prior to trial. The codefendant had given seven different statements.... These ranged from asserting no part in the murders, to claiming mere assistance, to describing petitioner's involvement with Fred Blackmon. These statements totally contradicted one another about what allegedly took place in the Blackmon residence and by the river.
"Trial counsel did not undertake such important cross-examination. Mr. Boyd's trial lawyer did little more than point out that the testimony and statement differed, period.... They did not expose to the jury the codefendant's lies on the stand. They did not elicit the key aspects in which the witness continually contradicted himself. The examination by the defense was rambling and did not convince the jury to reject what should have been proved to be the least credible evidence from the prosecution....
"Defense counsel's failures to impeach the state's case prejudiced petitioner immeasurably. Had jury and judge been apprised of the weaknesses in the state's case, Mr. Boyd would not have been convicted of capital murder and sentenced to death."
(Appellant's brief at pp. 14-15.)(Footnote omitted.)
We agree with the State's assessment that the record from the direct appeal reflects that the jury knew that Milstead was testifying in exchange for a sentence of life imprisonment without parole and it knew that Milstead had given many different versions of the crime and had admitted that some statements he had made were not true. Boyd's allegation regarding Milstead ignores the cross-examination and the fact that the jury was informed that Milstead gave different versions of the crime and that he admitted that some of his statements to the police were untrue. These statements were entered into evidence. Trial counsel specifically attacked Milstead's credibility in closing arguments by challenging the jurors to read Milstead's various statements and to compare them to Boyd's statement to determine who was telling the truth. Milstead's testimony was also impeached at trial by the testimony of Sharon Johnson, Boyd's girlfriend, who testified that Milstead told her that he had shot Mrs. Blackmon and that Boyd had shot Mr. Blackmon. Boyd v. State, 542 So.2d 1247, 1254 (Ala.Cr.App. 1988). Moreover, Milstead was cross-examined concerning the physical assaults on the victims. During closing arguments, trial counsel pointed out that forensic evidence did not support Milstead's testimony, in particular his horrible testimony about the alleged use of an ax on Mrs. Blackmon's body.
Boyd has not shown that his counsel's performance was deficient or that he was prejudiced by his counsel's performance in this regard. Strickland, supra.

I.H. and XX.
Boyd claims that the prosecutor made improper arguments and misleading statements of facts and law throughout the *389 trial, and that his counsel was ineffective for failing to object.
The substantive claim is procedurally barred because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3) and (5), Ala. R.Crim. P.
Boyd contends that his trial attorneys were ineffective because they did not object to the prosecutor's alleged improper arguments and misleading statements of facts and law allegedly made throughout the trial. Boyd's allegations are followed by string cites to the record on direct appeal.

I.H.-A.
Boyd argues that during opening and closing arguments, without objection from the defense, the prosecutor made exaggerated comments about Evelyn Blackmon's injuries, which were not supported by facts; stated whose "idea" it was to kill the Blackmons, without supporting facts in the record; stated that Boyd told Kenny Surrett that he had killed two people; made inaccurate representations about what Boyd told the police concerning his role in the crime; provided improper commentary on the answers Boyd gave to police interrogators; and made improper comments to the jury about Boyd's reasons for calling certain defense witnesses.
"`"During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference."... "To justify reversal because of an attorney's argument to the jury, this court must conclude that substantial prejudice has resulted."'"
Hyde v. State, [Ms. CR-95-2036, January 30, 1998] ___ So.2d ___ (Ala.Cr.App.1998). Boyd's alleged instances of misconduct do not demonstrate how he was prejudiced. As was stated in Hyde:
"Viewed in the context of the entire trial, the alleged instances of misconduct, even if they constituted misconduct, did not so infect the trial with unfairness as to make the resulting sentence a denial of due process. In fact, the jury recommended a sentence of life imprisonment without the possibility of parole, not death. Therefore, this issue is without merit."
___ So.2d at ___. Here, the jury returned a recommendation of life imprisonment without parole. Therefore, Boyd has not shown how counsel's performance resulted in prejudice. Moreover, we have searched the record on direct appeal for "plain error" that may have adversely affected Boyd's substantial rights and have found none. "`A finding of no plain error is one factor to consider when assessing the performance of trial counsel.'" Grayson v. State, 675 So.2d 516, 524 (Ala.Cr.App.1995) (quoting Hallford v. State, 548 So.2d 526 (Ala.Cr.App.1988), aff'd, 548 So.2d 547 (Ala.)).

I.H.-B.
Boyd argues that the prosecution misled the jury by telling it that there was no evidence tending to show whether Milstead would receive a sentence of life imprisonment or death. This, according to Boyd, was a falsehood because, he says, Milstead was testifying against Boyd in exchange for his life. The circuit court at the Rule 32 hearing would not hear testimony from Milstead's defense attorney who, according to Boyd, would have testified that the agreement between the State and Milstead was that in return for testifying against Boyd he could escape the death penalty. Appellant's brief at p. 76, n. 22.
Again the jury's recommendation of life imprisonment without parole negates his showing that he was prejudiced by counsel's performance. Moreover, we have searched the record on direct appeal for "plain error" that may have adversely affected Boyd's substantial rights and found none. "`A finding of no plain error is one factor to consider when assessing the performance of trial counsel.'" Grayson v. *390 State, 675 So.2d 516, 524 (Ala.Cr.App.1995) (quoting Hallford v. State, 548 So.2d 526 (Ala.Cr.App.1988), aff'd, 548 So.2d 547 (Ala.1989)).

I.H.-C.
Boyd contends that the State withheld information about deals it made with Robert Milstead and Kenny Surrett; that it withheld the full statement of Tony Gathye, who he says would have testified that Boyd did not control Milstead's actions when he saw them after the murder; that the lunacy commission report on Milstead, which contained evidence tending to show that he was in touch with reality at the time of the crime and that he exhibited adult antisocial behavior, could have shown that Milstead was aggressive and knew what he was doing. Boyd asserts that these undisclosed documents and witnesses would have presented exculpatory and material evidence, and had trial counsel had access to them, the outcome of both the guilt and sentencing would have been different. Therefore, he argues, it was prejudicial error for the State not to have disclosed this information, which was in its possession.
This claim does not concern trial counsel's failure to challenge allegedly improper statements by the prosecutor. If the State withheld this information as Boyd alleges, then counsel cannot be ineffective for not objecting because counsel was not aware of the information.

I.H.-D.
Boyd argues that the State's use of the testimony of Robert Milstead was improper, because, he says, the State knew or should have known that testimony was false, based on the number of conflicting statements Milstead gave. This claim does not concern trial counsel's failure to challenge allegedly improper statements by the prosecutor. Moreover, this claim conflicts with Boyd's claim that trial counsel failed to properly use Milstead's statements for impeachment purposes. Nevertheless, as stated elsewhere in this opinion, Milstead's statements were properly before the jury, and the jury was aware of their content. Boyd has not shown that counsel was deficient or that he was prejudiced in this regard.

I.H.-E.
Boyd argues that the prosecutor misstated the law by suggesting to the jury that it had a duty to Robert Milstead to convict Boyd of capital murder. Boyd also argues that the prosecutor improperly suggested to the trial court that the court had no authority to impose a sentence of life imprisonment without parole and improperly sought the death sentence by relying on religious precepts. "[T]he trial court is presumed to know the law and to disregard any improper comments or evidence in sentencing." Hyde, supra. Without a more specific argument, we assume that the trial court did that. Boyd has not demonstrated how he was prejudiced. Moreover, we have searched the record on direct appeal for "plain error" that may have adversely affected Boyd's substantial rights and found none. "`A finding of no plain error is one factor to consider when assessing the performance of trial counsel.'" Grayson v. State, 675 So.2d 516, 524 (Ala.Cr.App.1995) (quoting Hallford v. State, 548 So.2d 526 (Ala.Cr. App.1988), aff'd, 548 So.2d 547 (Ala.)).
In addition to the above, Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had objected to the allegedly improper comments, the result of the trial would have been different.

I.I.
Boyd contends that trial counsel allowed improper and prejudicial evidence to be admitted without objection. He argues that trial counsel failed to object to

*391 "certain of the many gruesome photographs of the victims that were unnecessary to the determination of any issue at trial and [that] were introduced solely to inflame the jurors against [Boyd].... They did not object when the prosecutor elicited `other crimes' evidence from an important state witness. They did not object when the other irrelevant evidence was allowed to go to the jury, including evidence regarding a necklace found in Mr. Boyd's car that was never sufficiently tied to Evelyn Blackmon....
"These failures to object, individually and together, undermine confidence in the outcome of petitioner's trial and sentencing and severely prejudiced him...."
(Appellant's brief at p. 17.)
At the Rule 32 hearing, Levinson testified that the victims were identified at trial from photographs. He stated that the parties could have entered into a stipulation as to identity to avoid introducing the photographs. It is pure conjecture and speculation as to whether the State would have agreed to such a stipulation. Boyd has not shown that trial counsel was ineffective in this regard or that the outcome of the trial would have been different had there been a stipulation.
Regarding his allegation about other crimes and the necklace, Boyd has not presented any facts to support these claims. The claims are based on mere assertions and conclusions. Boyd has not specified how any alleged failure to object rendered counsel ineffective. Therefore, Boyd has not met either the burden of pleading imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala. R.Crim.P. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had objected to alleged improper and prejudicial evidence, the result of the trial would have been different.

I.J.
Boyd contends that trial counsel failed to seek appropriate expert assistance for the pretrial, trial, and sentencing proceedings. Boyd argues:
"While trial counsel sought the assistance of a mental health expert and saw their motion denied ... they did not pursue the need for other experts in an effort to fight the state's case for a capital conviction and sentence of death. Had they obtained such assistance, they would have been able to raise sufficient doubts to preclude a capital conviction and the ultimate imposition of death sentence.
"For example, trial counsel did not move the court for funds for a ballistics and firearms expert despite the fact that they had no training or expertise in these fields.... Had they done so, they would have been able to present evidence demonstrating that the shots fired at Evelyn Blackmon were more consistent with bullets fired from the .25, the gun possessed by codefendant Robert Milstead.... The State's forensic experts could have been cross-examined credibly with the help of a ballistics specialist with regard to which firearm likely shot the bullets that resulted in each wound. Similarly, the damaging testimony about the use of an ax to `chop' Evelyn Blackmon would have been impeached with proper cross-examination about toolmark identification and the attributes of the allegedly used ax.... The assistance of an expert on these matters also would have led to proper impeachment of state witness David Higgins regarding the inadequacies in his testing to determine the actual use of each gun....
"The defense had equal need for a specialist in pathology. A pathologist would have countered the state's theory that the victims lingered before they died, thereby challenging the state's *392 ability to rely on the heinous, atrocious, or cruel aggravating factor and the trial court's finding of the same. A defense pathologist also would have challenged the unfounded speculations about what was allegedly done to Mrs. Blackmon both before and after her death.... Such expertise would have been critical in challenging the state's expert as well as the testimony of the codefendant....
"In addition to failing to investigate Mr. Boyd's troubled background ... trial counsel also failed to seek the services of a specialist who could have explained to jury and judge why growing up in an environment characterized by abuse, neglect, and alcoholism put petitioner at great risk for behaving violently himself.... Such an expert would have presented numerous mitigating factors and demonstrated for the factfinders how petitioner's background would have affected his development and judgment as a young adult. Counsel were also ineffective for making their one request for psychiatric assistance in open court rather that ex parte, as the state opposed the request and convinced the trial court to send Mr. Boyd to the state mental hospital over defense objection rather than provide a trained professional to explain the effects of petitioner's upbringing on his psychological makeup.... Had trial counsel made a proper and thorough argument detailing the need for mental health assistance and done so out of the presence of the district attorney, they would have received the aid of a psychiatric expert to work with rather than against the defense in pretrial, trial and sentencing proceedings.
"Trial counsel needed such expert assistance. They were not themselves trained in any of these areas ... and they had the testimony of a number of state experts to rebut. Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) had been decided prior to Mr. Boyd's capital trial. His attorney's failure to secure expert assistance in this complex case was deficient performance that prejudiced petitioner at all phases of his capital trial."
(Appellant's brief at pp. 17-20)(footnote omitted).
Boyd was evaluated by a licensed psychologist before trial. It was trial counsel's opinion that the report generated from this evaluation was not particularly helpful in his defense. Boyd disagrees with this assessment but offers nothing specific in rebuttal. (Appellant's reply brief at p. 12.)
Moreover, Dr. Joseph Burton, a pathologist; Carl Majesky, a consultant in firearms; Dr. Louis Mulry Tetlow, a psychologist; and Jan Vogelsang, a social worker, testified at the Rule 32 hearing. While their testimony was intended to be favorable to Boyd, and in some aspects appears to be so on the surface, none of the testimony presented at the Rule 32 hearing from these experts conclusively supports the claims quoted above. In the final analysis, all the testimony was either reconciled with the opinions of the State's experts or its reliability was called into question. For instance, Burton stated that the victims' bodies had stayed underwater too long to determine when specific injuries were inflicted; Majesky's qualifications were questionable and he did not know the effect of decomposition of the victims' bodies; Tetlow and Vogelsang said Boyd's actions were the result of bad decision-making on his part. Boyd has not shown that trial counsel's performance was deficient or that he was prejudiced. He has not shown that counsel's failure to call additional experts was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Moreover, Boyd has not shown that additional testimony would have changed the outcome of the case.

I.K. and XIII
Boyd claims that the security measures in the courtroom were excessive and prejudicial and that counsel was ineffective for *393 failing to object to the use of those measures.
The substantive claim is procedurally barred because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3) and (5), Ala. R.Crim. P.
Boyd contends that his trial attorneys were ineffective because they did not object to the courtroom's being filled with uniformed officers, to the placement and use of a metal detector outside the courtroom, and to the fact that Boyd wore shackles inside the courtroom. According to Boyd, had trial counsel objected, and "these extreme and prejudicial `security' steps been removed or diminished, the jury would have been able to deliberate in an untainted, nonthreatening atmosphere, and the result of the trial would have been different." (Appellant's brief at pp. 20-21.)
Boyd has not presented any facts to support this claim. The claim is based on mere assertions and conclusions. Therefore, Boyd has not met either the burden of pleading imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made these objections, the result of the trial would have been different.

I.L.
Boyd contends that trial counsel was ineffective for failing to object to the admission into evidence of statements he says were illegally obtained from codefendant Robert Milstead. According to Boyd:
"Among the various statements made by Mr. Milstead and admitted into evidence against Mr. Boyd ... was a statement taken just minutes after the codefendant had asserted his right to counsel.... There is no evidence in the record to explain how Milstead came to `change his mind' after invoking his 5th Amendment right. Indeed, any questioning after that point by any law enforcement officer would have been impermissible, as no lawyer had been provided during the interrogation.... The statementincriminating as to Mr. Boydwas thus illegally obtained and should not have been entered into evidence against petitioner. Trial counsel's failures to object to this inadmissible evidence was prejudicial error."
(Appellant's brief at p. 21.)
Boyd did not have standing to object to the introduction of Milstead's statement. "The general rule is that a defendant has standing to challenge the admission of evidence only if the defendant's constitutional rights have been violated." Williams v. State, 710 So.2d 1276, 1311 (Ala.Cr.App.1996) ("The appellant had no standing to challenge the voluntariness of [another's] statement or grand jury testimony."), aff'd, 710 So.2d 1350 (Ala. 1997). Boyd has not alleged any possible exception to this rule. Moreover, his claim ignores the possibility that Milstead may have reinitiated contact with interrogators. The United States Supreme Court held in Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378, (1981), that where an accused initiates further communication, exchanges, or conversations with the police, his prior invocation of the right to counsel during the interrogation is waived. See Whitt v. State, 733 So.2d 463 (Ala.Cr.App.1998).
Therefore, this claim is barred as being insufficiently pleaded because it is based on mere assertions and conclusions. Boyd has not met either the burden of pleading imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala. R.Crim.P. Neither has Boyd shown that trial counsel was deficient or that he was prejudiced because of counsel's performance. He has not shown that counsel's performance was outside "the wide range *394 of reasonable professional assistance" Strickland, 466 U.S. at 689, 104 S.Ct. 2052, nor that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.

I.M., XXIV, and XXVIII.
Boyd claims that erroneous instructions were given by the trial court at the guilt phase of his trial and that his counsel was ineffective for failing to object to these instructions.
The substantive claims are procedurally barred because they could have been, but were not, raised and addressed at trial and on direct appeal (Issue XXIV), or were addressed on direct appeal (Issue XXVIII). Rules 32.2(a)(2),(3), and (5), Ala. R.Crim. P.
Boyd contends that his trial attorneys were ineffective because they did not object to what he says were erroneous instructions. According to Boyd:
"Trial counsel's failure regarding the court's jury charges were manifold. They did not object adequately to the absence of a proper instruction on accomplice testimony; to the court's improper charges on lesser included offenses, including the absence of a felony murder instruction; to improper charging of multiple offenses; to the confusing charge on reasonable doubt; to the failure to define all critical terms to the jury; or to the flawed charge on intent to kill with regard to accomplice liability. Counsel failed adequately to object to the court's refusal to charge the jury on the distinction between murder and capital murder. See [Issue] XXVIII.... Trial counsel further failed to object to improper and prejudicial verdict forms. See [Issue] XXIV.
"Had counsel requested proper charges, made the necessary objections and secured accurate instructions, Mr. Boyd's jury would not have convicted him of the capital murders of both Fred and Evelyn Blackmon. Petitioner's counsel were ineffective for their handling of the instructions at their client's trial for his life."
(Appellant's brief at p. 22.)
Regarding Issue XXIV Boyd argues that trial counsel was ineffective because error was committed when the trial court
"gave the jury only one acquittal form for each victim even though the court instructed the jury on eight counts of capital murder.... The failure to provide the jury with acquittal verdict forms for each and every one of the eight capital murder counts deprived the jury of the opportunity to consider each count separately and effectively coerced the jury into returning a guilty verdict on four counts of capital murder even if it only believed Mr. Boyd guilty of one count of capital murder and not guilty on the other counts."
(Appellant's brief at pp. 88-89.) (Emphasis in appellant's brief.)
No error was committed because when Boyd was convicted in 1987, before the effective date of the Alabama Rules of Criminal Procedure, the
"common law in Alabama ... allowed a general verdict of guilty to be returned if any one count or offense in the indictment was sustained by the proof, so long as the sentence pronounced did not impose a greater punishment than that prescribed for one of the offenses charged in the indictment. See Black v. State, 39 Ala.App. 269, 97 So.2d 833 (1957) (upheld general verdict returned on indictment in two counts charging two distinct offenses)."
Knotts v. State, 686 So.2d 431, 462 (Ala.Cr. App.1995), aff'd, Ex parte Knotts, 686 So.2d 486 (Ala.1996).[10] Other than the fact that Milstead and Boyd each blamed the other for the actual killings, the facts in *395 this case were undisputed. If the jury believed that Boyd killed the Blackmons, he was subject to a conviction for each of the eight counts. Each conviction warranted a death sentence. The sentence pronounced did not impose a greater punishment than that prescribed for one of the offenses charged in the indictment.
Counsel cannot be said to be ineffective for not filing a motion for which there is no legal basis. See Patrick v. State, 680 So.2d 959, 963 (Ala.Cr.App.1996); Hope v. State, 521 So.2d 1383, 1386 (Ala.Cr.App. 1988).
Regarding Issue XXVIII Boyd argues:
"During the deliberations at Mr. Boyd's capital trial, the jury returned a note to the trial court stating `Could we have distinction between murder and capital murder?'... The Court refused to answer the question, and, instead, indicated that the terms had already been defined and that the jury should use its own recollection of the definitions to determine the distinction.... Without receiving any further instruction, the jury returned with a verdict of guilty as charged in the indictment. The jury was allowed to return a guilty verdict of capital murder even though it had indicated it did not understand the charge of capital murder."
(Appellant's brief at p. 93.) (Emphasis in appellant's brief.) The substantive claim was decided adversely to Boyd on direct appeal. We stated:
"Furthermore, we do not find the trial judge's refusal to give additional instructions to the jury on murder and capital murder to be error, since the trial judge thoroughly instructed the jury on these matters in his oral charge to them. There is no basis of error to reversal shown here."
542 So.2d 1247, 1259 (Ala.Cr.App.1988).
Counsel cannot be said to be ineffective for not filing a motion for which there is no legal basis. See Patrick v. State, 680 So.2d 959, 963 (Ala.Cr.App. 1996); Hope v. State, 521 So.2d 1383, 1386 (Ala.Cr.App.1988).
Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance" Strickland, 466 U.S. at 689, 104 S.Ct. 2052, regarding Issue XXVIII and Issue XXIV. Nor has Boyd shown regarding these issues that there is a reasonable probability that, if trial counsel had made these objections, the result of the trial would have been different.
Other claims presented as ineffective assistance of counsel under I.M. are based on mere assertions and conclusions and have been insufficiently pleaded in that they lack the necessary specificity. Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P.

I.N. and XXI.
Boyd claims that his conviction was obtained based on the uncorroborated testimony of his accomplice, Robert Milstead and that his counsel's failure to object to Milstead's testimony on that basis constituted ineffective assistance.
The substantive claim is procedurally barred because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3), and (5), Ala. R.Crim. P.
Boyd contends that his trial attorneys were ineffective because, he says, they did not object to the lack of corroborating evidence. According to Boyd:
"Trial counsel failed to object adequately to the absence of evidence corroborating the testimony of accomplice Robert Milstead.... Counsel believed the codefendant was lying ... but did not protect their client or the record regarding his testimony or the evidence that supposedly corroborated it. The prosecution did not present the kind of evidence necessary under Alabama and federal law to legally corroborate the self-serving testimony of the codefendant. Had they done so, a capital conviction could not have been sufficient for a *396 finding of guilt on all the elements of the offense.... Counsel were ineffective for their failure to make the appropriate motions. A new trial is required."
(Appellant's brief at p. 23.)
Boyd further argues:
"The only evidence presented to indicate that petitioner was the actual killer of both the Blackmons was the dubious testimony offered by is codefendant, Robert Milstead.... The evidence to support the state's theory of robbery, kidnaping, and intentional murder all came from this witness whose motive to save his own skin was undeniably strong.... Subtracting Robert Milstead's testimony from the state's case against Glenn Boyd leaves almost nothing."
(Appellant's brief at pp. 79-80.)
"`"The test for determining whether there is sufficient corroboration of the testimony of an accomplice consists of eliminating the testimony given by the accomplice and examining the remaining evidence to determine if there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense." Tarver v. State, 500 So.2d 1232 (Ala.Cr.App.1986), affirmed, 500 So.2d 1256 (Ala.1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987), citing, Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973) (emphasis supplied).' Garrison v. State, 520 So.2d 219 (Ala.Cr.App.1987) (wherein accomplice testimony was sufficiently corroborated by a witness who testified that, prior to the incident, he overheard a conversation in which the appellant discussed plans for a burglary)."
Patterson v. State, 538 So.2d 44, 45 (Ala. Cr.App.1988).
The testimony of Kenny Surrett was sufficient corroboration of Milstead's testimony to connect Boyd to the offense. Surrett testified
"that he is a friend of the appellant and grew up with him. He stated that he was with the appellant and Milstead the night before the murders took place. Surrett saw a silver .25 caliber gun and a .32 caliber gun in the appellant's car.
"On March 27, 1986, Surrett went by the appellant's house to talk to him about some money the appellant owed him. When Surrett arrived, the appellant came out of the bathroom and said he could not believe how cold-blooded he was.
"Then the appellant said he had something to tell Surrett. He said he and Milstead went to the Blackmons' house on the morning in question. The appellant took Mr. Blackmon to the bank and Mr. Blackmon got some money. Milstead and the appellant then took the Blackmons to the river. The appellant said Milstead hit Mrs. Blackmon in the nose and then shot her a couple of times. Later, the two broke Mrs. Blackmon's back and put her in a barrel which they pushed into the river.
"The appellant said he hit Mr. Blackmon with a stick and then shot him. They put Mr. Blackmon's body into the trunk of his car and drove it into the river.
"After the appellant finished talking, Surrett noticed some money on a table. The appellant said he got the money from Mr. Blackmon and paid Surrett the money he owned him.
"The next week, the appellant called Surrett and asked him if he had heard the news about the Blackmons being missing. The appellant asked Surrett if he believed his story now. Surrett told the appellant that he did not want to hear it, and it was not something to joke about.
"The next day, Surrett was with the appellant at the barber shop. The appellant made a joke that the Blackmons might be at the bottom of the river. The following day, Surrett told the appellant that he had told somebody about what the appellant told him. The appellant was mad."
*397 Boyd v. State, 542 So.2d 1247, 1252-53 (Ala.Cr.App.1988).
Counsel cannot be said to be ineffective for not filing a motion for which there is no legal basis. See Patrick v. State, 680 So.2d 959, 963 (Ala.Cr.App.1996); Hope v. State, 521 So.2d 1383, 1386 (Ala.Cr.App. 1988).
Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance" Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown regarding this claim that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.

I.O.
Boyd contends that trial counsel failed to advocate on his behalf adequately at the penalty phase. According to Boyd:
"In addition to failing to present available and compelling mitigating evidence at the penalty phase ... counsel otherwise failed to represent their client adequately. They provided otherwise inadmissible evidence about petitioner's criminal history to the sentencing jury and judge.... Defense counsel's `closing argument' consisted of fifteen words.... Counsel failed to object to improper conduct and argument by the state. See [Issues] I.D, I.E, I.H, I.I, I.L, I.Q, supra.
"These and the other deficiencies recounted in this brief rendered counsel's penalty phase representation wholly inadequate.... Counsel's failures prejudiced Mr. Boyd before the sentencing court and before the jury in that proper advocacy would have resulted in a unanimous jury recommendation of life-with-out-parole for petitioner."
(Appellant's brief at pp. 23-24.) This claim amounts to an assertion that the cumulative effect of other alleged errors during the penalty phase rendered trial counsel ineffective. We have reviewed these other claims and found them to be insufficiently pleaded or not error.
Moreover, trial counsel called four witnesses at the penalty phase of Boyd's trial. See I.A. After hearing the evidence, the jury recommended a sentence of life imprisonment without parole. At the Rule 32 hearing much evidence was presented concerning Boyd's childhood. However, as stated in Part I.A. of this opinion, there were sufficient aggravating circumstances to justify overriding the jury's recommendation despite this evidence.
Boyd has not shown that trial counsel was deficient or that he was prejudiced by counsel's performance. Nor has he shown that counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had performed differently his sentence would have been different.

I.P.
Boyd contends that trial counsel failed to present a strategy to save his life and that counsel otherwise failed to properly represent him at the sentencing hearing before the trial court. According to Boyd:
"[trial counsel] failed to present any mitigation, including evidence of the serious abuse he suffered as a child; the neglect of his parents; the chaotic and dysfunctional homes in which he was reared; the alcoholism in his home; the poverty, inadequate food, and lack of medical care; the effect of all of this on his development; or the evidence of those in the community who worried about him as he grew up.... They neither sought nor presented evidence pertaining to the culpability and background of the codefendant, nor records documenting the family instability, or other evidence that would have supported a case for life imprisonment without parole. They did not present any expert testimony. Abundant evidence was available for the trial court's consideration but was not *398 discovered or used.... Counsel's dropping the ball after the jury's recommendation and their total failure to investigate, explore, prepare and present any of this evidence was grossly ineffective.... This Court must reverse the court below and require a new judge [for] sentencing in this case.
"These were not the only deficiencies in counsel's performance. Trial counsel also failed to make effective arguments before the sentencing court as to why it should accept the jury's verdict. Counsel failed to object to the admission into evidence of a prejudicial presentence investigation report which included inadmissible hearsay, the fruits of an uncounseled interview with petitioner, a recounting of the effects of the crime on the victims' family, juvenile arrests, the personal commentary of the author, and the victim's families' desire for death.... Trial counsel failed to object to the use of improper and invalid convictions to negate the mitigating circumstance of not significant prior criminal history....
"Finally, trial counsel failed to object to the impropriety of the trial court's rejecting the jury life verdict in this case on equal protection, due process, and Eighth Amendment grounds.... They failed to object to the court's improper reliance on invalid aggravating circumstances, including a lack of sufficient evidence, double counting, and the vagueness of the heinousness factor. They did not contest the trial court's rejection of established mitigating circumstances and made no inquiry into possible bias by the trial judge....
"Trial counsel's performance was grossly deficient at the most important stage of these proceedings. Had they advocated properly, William Glenn Boyd would not have been sentenced to death...."
(Appellant's brief at pp. 25-27.)
Trial counsel stated that the defense strategy was to humanize Boyd for the jury. Four witnesses were presented during the penalty phase in this effort. For the reasons stated in Part I.A of this opinion, we do not find counsel's efforts to be ineffective. Moreover, § 13A-5-47, Ala.Code 1975, governs the determination of sentence by the trial court. Section 13A-5-47, Ala.Code 1975, does not provide for the presentation of additional mitigation evidence at sentencing by the trial court. Therefore, trial counsel did not err in failing to do so.
A presentence report is entirely hearsay but admissible under § 13A-5-47, Ala. Code 1975. Dill v. State, 600 So.2d 343 (Ala.Cr.App.1991), aff'd, 600 So.2d 372 (Ala.1992). Therefore, trial counsel did not err in failing to object to the presentence report.
Other assertions of ineffective assistance of counsel under the heading I.P. in the appellant's brief to this court are based on mere assertions and conclusions and have been insufficiently pleaded without the necessary specificity. Rule 32.3 and Rule 32.6(b), Ala.R.Crim.P.
Boyd has not shown that trial counsel's performance was deficient or that he was prejudiced by counsel's deficient performance. Nor has he shown that counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown regarding these claims that there is a reasonable probability that, if trial counsel had objected on this ground, the result of the trial would have been different.

I.Q. and XXXIII.
Boyd claims that his sentence of death was imposed pursuant to a pattern of racial bias against defendants who are convicted of killing white victims and that his counsel was ineffective for failing to object on that basis.
The substantive claim is procedurally barred because it could have been, but was not, raised and addressed at trial and *399 on direct appeal. Rule 32.2(a)(3) and (5), Ala.R.Crim.P.
Boyd contends that his trial attorneys were ineffective because, he says, they did not properly object on the basis that the imposition of the death penalty in this case reflected a pattern evincing racial bias. Boyd, a white male, was sentenced to death for killing two white people. According to Boyd:
"Petitioner was sentenced to death for the killing of two prominent white [Calhoun] County citizens. This imposition of a death sentence was pursuant to a pattern of racial bias that characterizes the administration of the death penalty in [Calhoun] County and in Alabama as a whole.... At no point did counsel attempt to challenge the seeking of the death penalty in this case based on the prominence of the victims, nor did they confront the evidence right before them of racially biased decision-making in the elimination of virtually every single African American who was qualified for jury service.... Counsel's failure to object to the racially discriminatory use of the death penalty in petitioner's case deprived him of the effective assistance of counsel...."
(Appellant's brief at p. 28.)
Boyd argues:
"Petitioner was sentenced pursuant to a pattern of racial bias in Alabama generally and in Calhoun County in particular. Of the six people who have been sentenced to death to date in the county in the modern era, all have been sentenced for killing whites. This is so despite the fact the African Americans account for over half the victims of homicide in Calhoun County. The discretion of the district attorney in choosing which cases to prosecute as death casesas well as the discretion of the sentencing judge in determining which cases to overridewere influenced by concerns of the victims' race.... It was error for the trial court to dismiss this critical issue from consideration in this case."
(Appellant's brief at p. 108.)(Emphasis in Appellant's brief; footnote omitted.) Boyd submitted as exhibits the strike list and the venire list showing each juror's race. (March 5, 1998, Supp.record, Vol.2, C.R. 265-278.) As exhibit H to his "Evidentiary Proffer regarding Rule 32 Claims Dismissed by the Trial Court," Boyd provided the affidavit of Michael L. Radelet, a professor in the department of sociology and in the Center for the Study of Criminal Law and Criminology at the University of Florida. Radelet's affidavit presents statistics suggesting that "death sentences in Alabama are more likely when whites are killed than when blacks are killed." (March 5, 1998, Supp.record, Vol.1, C.R. 115.) However, Radelet concedes in his affidavit that his data is inconclusive because more research is required to take into account legally relevant factors. Boyd presented nothing to support his allegation that Calhoun County, in particular, implemented the death penalty in a discriminatory fashion.
Moreover, we agree with the following assertion made by the State: "To prevail on an equal protection claim, which Boyd seems to be contending, he must prove that the decision makers in his case acted with discriminatory purpose. McCleskey v. Kemp, 481 U.S. 279, 291-300, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)." Appellee's brief at p. 66. Boyd has not offered such proof.
This claim is barred because it has been insufficiently pleaded. The claim is based on mere allegations and conclusions. Therefore, Boyd has not met either the burden of pleading imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had objected on this *400 ground, the result of the trial would have been different.

I.R. and XXXV.
Boyd claims that electrocution, the means by which the death penalty is carried out in Alabama, is cruel and unusual punishment. He also argues that his trial counsel was ineffective for failing to raise this issue.
The substantive claim is procedurally barred because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3), and (5), Ala.R.Crim.P.
Boyd contends that his trial attorneys were ineffective because they did not properly object to the use of electrocution in Alabama as a means of imposing the death penalty as cruel and unusual punishment. According to Boyd:
"The State of Alabama seeks to execute William Glenn Boyd by subjecting him to torture, suffering and mutilation in its electric chair.... Mr. Boyd's former counsel failed to raise this issue at any level of the proceedings. Their failure to do so deprived petitioner of competent representation; prejudice lies in the fact that he will be subject to torture if executed in this state's machinery...."
(Appellant's brief at p. 28.)
We agree with the State:
"Both Alabama state and federal courts have consistently held that death by electrocution does not constitute cruel and unusual punishment. Sullivan v. Dugger, 721 F.2d 719 (11th Cir.1983) ... Lindsey v. Smith, 820 F.2d 1137, 1155 (11th Cir.1987), ... Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978),... Lowenfield v. Phelps, 817 F.2d 285 (5th Cir.1987), ... Ex parte Harrell, 470 So.2d 1309 (Ala.1985); Williams v. State, 627 So.2d 985 (Ala.Cr.App.1991),... Stephens v. State, 580 So.2d 11 (Ala. Cr.App.1990), ... Jackson v. State, 516 So.2d 726 (Ala.Cr.App.1985), ... Wright v. State, 494 So.2d 726 (Ala.Cr.App. 1985), ..."
Appellee's brief at p. 67. Moreover, we agree with the State's contention that "the claim that Alabama utilizes ineffective procedures and outdated equipment has previously been litigated and rejected. Thomas v. Jones, 742 F.Supp. 598, 602 (S.D.Ala. 1990). See also Ritter v. Smith, 568 F.Supp. 1499 (S.D.Ala.1983), reasoning adopted and aff'd in relevant part, 726 F.2d 1505, 1519 (11th Cir.)." (Appellee's brief at p. 68.)
Based on the current state of the law, Boyd would not have prevailed on these claims had his trial counsel objected. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection the result of the trial would have been different.

I.S.
Boyd contends that trial counsel failed to properly prepare, investigate or pursue an effective defense on his behalf. Other than Boyd's reference to substantive issues XV, XVI, and XVII, this claim consists of a list of the "plethora of errors regarding the presentation of the defense case individually and collectively [that] denied Mr. Boyd the effective assistance of trial counsel." (Appellant's brief at p. 31.)
"This `grocery list' of counsel's alleged failures is totally useless because it represents only legal conclusions unsupported by specific facts.... `A petition is "meritorious on its face" only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if those facts are true.'"
*401 Hope v. State, 521 So.2d 1383, 1389 (Ala. Cr.App.1988) (quoting Moore v. State, 502 So.2d 819, 820 (Ala.1986)).
Boyd argues in issue XV of his brief that the police search of his car was illegal. Boyd concedes that the Alabama Supreme Court addressed this issue adversely to him on direct appeal. Ex parte Boyd, 542 So.2d 1276 (Ala.1989).
Boyd argues in issue XVI of his brief that the introduction at trial of what he says were highly inflammatory and prejudicial photographs of the victims' bodies violated his rights. Boyd concedes in this argument that "[a]t trial, defense counsel objected strenuously to their admission.... Nevertheless, the trial court admitted the evidence." (Appellant's brief at page 67.) Therefore, Boyd has not shown trial counsel's performance to be deficient in this regard.
Boyd argues in issue XVII of his brief that his conviction and sentence rested upon improper emotional appeals to the jury by continual references to the suffering of the victims' families. There is no merit to this claim of ineffectiveness of trial counsel because 1) there was overwhelming evidence of Boyd's guilt; 2) the jury recommendation of life imprisonment without parole was the least severe option available; 3) this court's independent review of the implementation of the death penalty on direct appeal disclosed no errors and no suggestion that the sentence was "imposed under the influence of passion, prejudice, or other arbitrary factor". Boyd v. State, 542 So.2d 1247, 1260 (Ala. Cr.App.1988). Boyd has not shown that counsel's performance was deficient or that he was prejudiced by counsel's performance. Nor has Boyd shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.

I.T.
Boyd contends that his counsel failed to adequately object to the absence of meaningful appellate review of death penalty cases in the state of Alabama. According to Boyd:
"... the appellate courts of our state have neither articulated nor followed a system of meaningful appellate review in death penalty cases, particularly where a jury has first recommended life without parole.... With all due respect, petitioner submits that in his case in particular, the appellate opinions indicate little more than perfunctory recitation of the statutory requirements in affirming sentence ...
"Petitioner's counsel did not object to this inadequate system of review at any level of the process. He also did not adequately contest the failure of the appellate courts to consider his motion to supplement the record on appeal.... Counsel's failures cost Mr. Boyd a meaningful appeal and the likelihood of reversal of his capital conviction and sentence of death. Petitioner was thus severely prejudiced by counsel's deficient representation...."
(Appellant's brief at page 32-3.)
We agree with the State's assertion that "[t]he United States Supreme Court has reviewed Alabama's sentencing statute, and has found it to be constitutional. Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995)." (Appellee's brief at p. 70.) Boyd has not shown that trial counsel's performance in this regard was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.
Boyd contends that trial counsel did not adequately contest the failure of the appellate courts to consider his motion *402 to supplement the record on appeal. The basis of this motion was the omission from the record on direct appeal of that portion of the record showing trial counsel's objection to the trial court's refusal to give additional instructions to the jury on murder and capital murder. On direct appeal we stated that the record did not reflect that the issue had been properly preserved for appellate review. However, in addition, we stated:
"Furthermore, we do not find the trial judge's refusal to give additional instructions to the jury on murder and capital murder to be error, since the trial judge thoroughly instructed the jury on these matters in his oral charge to them. There is no basis of error to reversal shown here."
542 So.2d at 1259. Boyd would not have prevailed on this claim had trial counsel objected. Thus Boyd has not shown that he was prejudiced by trial counsel's performance. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made this objection, the result of the trial would have been different.
Boyd also incorporates his argument in issue XXII in his brief as factual support for this claim. Boyd argues that the trial court should have granted his requests for a continuance: when codefendant Robert Milstead suddenly pleaded guilty and agreed to testify against Boyd; when the state ended its case; and before the commencement of the guilt phase. According to Boyd, these errors impaired his defense. Boyd concedes that counsel sought a continuance at these times but the trial court denied the request. Trial counsel is not ineffective for having an objection overruled or a motion denied. Boyd has not shown that counsel's performance was deficient or that he was prejudiced by the deficient performance.
Boyd also has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, 104 S.Ct. 2052, or that there is a reasonable probability that, if trial counsel had made this objection the result of the trial would have been different.

I.U.
Boyd contends that appellate counsel failed to provide effective assistance of counsel on appeal to the Alabama Court of Criminal Appeals and the Alabama Supreme Court. Boyd was represented on appeal by Steve Levinson, one of his trial counsel. Boyd's argument consists of a mere recitation of issues he says appellate counsel failed to pursue on direct appeal and the allegation that appellate counsel was too inexperienced to effectively handle Boyd's case.
This claim is barred because it has been insufficiently pleaded. The claim is based on mere allegations and conclusions. Therefore, Boyd has not met either his burden of pleading under Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. Boyd has not shown that trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had made objections, the result of the trial would have been different.
Moreover, § 13A-5-54, Ala.Code 1975, provides:
"Each person indicted for an offense under the provisions of this article who is not able to afford legal counsel must be provided with court appointed counsel having no less than five years' prior experience in the active practice of criminal law."
Levinson testified at the Rule 32 hearing that he was licensed to practice law in 1978 and that he was appointed to Boyd's case in 1986. He stated that he was a sole practitioner who had never tried a murder case or a capital murder case, but that his practice included criminal work. He stated that Grant Paris was appointed as cocounsel to Levinson. Paris had the requisite *403 five years experience in criminal law, but had not handled a capital case before. Mannon Bankson was also appointed, but only to assist Levinson and Paris because he did not have the required five years experience in criminal work. Vol.16, R. 102-03. Levinson and Michael Allsup were appointed to represent Boyd on appeal. During the appeal process, Allsup was suspended from the practice of law because he failed to fulfill continuing legal education requirements of the Alabama State Bar. Levinson prepared Boyd's appeal. We see no error with Boyd's representation at trial or on appeal.
At the Rule 32 hearing, Levinson testified that on appeal he "focused on the issues that [he] thought were most beneficial to [Boyd]." (Vol.16, R. 138.) We agree with the State's assertion that the United States Supreme Court has held that this practice is acceptable.
"[E]xperienced advocates have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Selecting the most promising issues for review has assumed a greater importance in an era when the time for oral argument is strictly limited in most courts and when page limits on briefs are widely imposed."
Jones v. Barnes, 463 U.S. 745, 746, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).
As stated above, this issue is insufficiently pleaded.

I.V.
Boyd contends that he was denied effective assistance of trial and appellate counsel because of the extremely low compensation provided by the State of Alabama for the defense attorneys representing capital defendants. He argues that the present payment scheme provides "a disincentive to do work necessary to defend their client properly." (Appellant's brief at p. 38.)(Emphasis in appellant's brief.) In support of this claim, Levinson testified at the Rule 32 hearing that representing Boyd was a financial hardship that resulted in his losing money. He further testified that the payment that he did receive was insignificant. (Vol.16, R. 109.) According to Boyd: "Failing to pay his lawyers adequately for litigating one of the most difficult and trying cases violated various guarantees under the Alabama and federal constitutions, including the promise of equal protection for the indigent, due process of law, and effective representation, and constitutes a taking of the lawyer's property without just compensation." (Appellant's brief at p. 38.)
Although included as a claim alleging ineffective assistance of counsel, this claim does not challenge the effectiveness of counsel. Boyd argues that because of low funding counsel had no incentive to perform. Boyd does not allege an instance where counsel did not perform effectively because of funding. Therefore, this claim is precluded from review in a Rule 32 petition because it could have been, but was not, raised and addressed at trial and on direct appeal. Rule 32.2(a)(3), and (5), Ala.R.Crim.P.
However, to the extent, if any, that the argument can be construed as asserting that Boyd's counsel was ineffective because of limited funds, we conclude that there has been no specific assertion that Boyd's counsel failed to provide effective assistance due to the lack of State provided funds. Therefore, Boyd has not met either his burden of pleading imposed by Rule 32.3 or the specificity requirements of Rule 32.6(b), Ala.R.Crim.P. Boyd has not shown that because of low funding trial counsel's performance was outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Nor has Boyd shown that there is a reasonable probability that, if trial counsel had been paid more for defending Boyd, the result of the trial would have been different.

*404 PRECLUDED SUBSTANTIVE CLAIMS
The following claims are procedurally precluded because they could have been, but were not, raised and addressed at trial and on direct appeal. Rules 32.2(a)(3), and (5), Ala. R.Crim. P. The Roman numerals correspond to the number assigned that argument in Boyd's brief to this court.
II. Boyd's counsel was too inexperienced to try a capital case.
VIII. Boyd was deprived of due process, equal protection, and a fair trial and sentencing proceeding because the trial court refused to provide funds for expert assistance.
XVIII. The trial court erred in allowing the State to challenge Boyd's subpoenaed witnesses and in requiring him to disclose before trial what facts he hoped to gain from each witness.
XIX. The prosecution was allowed to present inadmissible evidence portraying Boyd as a "bad character" who should be convicted because he had violated the law on occasions other than the murder of the victims.
XX. Boyd was prejudiced by the prosecutor's alleged misconduct during the guilt and sentencing phases of the trial.
XXII. The trial court erred in failing to grant Boyd sufficient time to prepare at the guilt phase and the penalty phase of the trial.
XVIII. The trial court erred in allowing the State to challenge Boyd's subpoenaed witnesses and in requiring him to disclose before trial what facts he hoped to gain from each witness.
XXIII. The trial court's jury instructions at the conclusion of the guilt phase of the trial were erroneous.
XXV. The evidence was insufficient to sustain a conviction for the capital murder of Evelyn Blackmon.
XXVI. There was insufficient evidence to prove that Boyd kidnapped the victims with the intent to terrorize them.
XXIX. The trial court erred in considering a presentence report that contained impermissible material.
XXX. The trial court considered aggravating circumstances that were not applicable in this case.
XXXI. The trial court erred in failing to find nonstatutory mitigating circumstances based on evidence offered at the penalty phase.
XXXII. The trial court erred in imposing a sentence of death after the jury recommended a sentence of life imprisonment without parole.
XXXIV. The Alabama death penalty statute violates the Sixth, Eighth, and Fourteenth Amendments and the Alabama Constitution by failing to provide meaningful appellate review for those under sentence of death.
The following claims are procedurally precluded because they could have been, but were not, raised on direct appeal. Rule 32.2(a)(5), Ala. R.Crim. P.
IX. Boyd was deprived of independent psychiatric assistance and was sent against his will to the Taylor Hardin Medical Facility, a state facility.
X. Boyd's right to a fair trial by an impartial jury was violated by the trial court's failure to permit individually sequestered voir dire of prospective jurors.
XI. Boyd was deprived of an impartial jury by the failure of the trial court to grant his challenges for cause during jury selection.
The following claims are procedurally precluded because they were raised and addressed at trial and could have been, but were not, raised on direct appeal. Rule 32.2(a)(2) and (a)(5), Ala. R.Crim. P.
IV. Boyd was denied his right to jury pools representative of the community.
VII. The trial court erred in failing to grant a change in venue.

*405 XIV. The trial court erred in admitting out-of-court statements made by Boyd.
XXII. The trial court erred in failing to grant Boyd sufficient time to prepare at the guilt and penalty phases of the trial.
The following claim is procedurally precluded because it was or could have been raised and addressed at trial, and it could have been, but was not, raised on direct appeal. Rule 32.2(a)(2), (a)(3), (a)(5), Ala. R.Crim. P.
XVI. The trial court erred in admitting highly inflammatory and prejudicial photographs of the deceased victims.
The following claim is procedurally precluded because it was raised or addressed on direct appeal. Rule 32.2(a)(4), Ala.R.Crim. P.
VI. The circuit court of Calhoun County was without jurisdiction to try Boyd for the capital murder of Evelyn Blackmon because Evelyn Blackmon was killed in St.Clair County. See, Boyd v. State, 542 So.2d 1247, 1257 (Ala.Cr.App. 1988).
The following claim is procedurally precluded because it was raised or addressed at trial and was raised or addressed on direct appeal. Rule 32.2(a)(2), and (a)(4), Ala.R.Crim.P.
XV. Boyd's constitutional rights were violated by the admission of evidence he alleges was illegally seized from his automobile.
The following claim is procedurally precluded because it could have been but was not raised at trial, and was raised or addressed on direct appeal. Rule 32.2(a)(3), and (a)(4), Ala.R.Crim.P.
XXVIII. The trial court failed to define for the jury the distinction between murder and capital murder when the jury sought an explanation during deliberations.
ISSUES COGNIZABLE IN RULE 32 PETITION

XXXVI.
Boyd contends that the court that heard his Rule 32 petition committed reversible error in dismissing claims that are clearly cognizable in a Rule 32 postconviction proceeding. According to Boyd, these claims included: claims based on newly discovered evidence, which could not have been raised at trial; claims based on juror misconduct; claims based on the state's withholding exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and claims based on the allegation that exculpatory evidence had been discovered from other witnesses. The circuit court refused to hear testimony at the Rule 32 hearing on any claim other than those alleging ineffective assistance of counsel, holding that all other issues were precluded and were subject to summary dismissal. Moreover, the trial court refused to allow Boyd to proffer expected testimony from these witnesses on these claims.[11]
Under Rule 32.1, Ala.R.Crim.P., subject to the preclusions in Rule 32.2, a remedy is afforded a defendant when the grounds supporting the requested relief are based on newly discovered facts (1) that were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence; (2) that were not merely cumulative to other facts that were known; (3) that were not merely amounting to impeachment evidence; (4) that if they had been known at the time of trial or of sentencing, the result probably would have been different; and (5) that establish that petitioner is innocent of the crime for *406 which petitioner was convicted or should not have received the sentence that petitioner received. Rule 32.1(e)(1) through (5), Ala.R.Crim.P. Rule 32.3 places the burden on the defendant to plead and prove facts necessary to obtain relief. Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief. Rule 32.6(b). When this is done, the burden shifts to the state to plead preclusionary grounds meriting summary dismissal.[12] Rule 32.3. The burden then shifts to the petitioner to disprove a preclusionary ground plead by the state.
We agree that the above assertions are not necessarily precluded by Rule 32.2(a), Ala.R.Crim.P. We must evaluate the record to determine whether the trial court's summary dismissal of these claims requires a remand for the circuit court to take additional testimony. The substance of Boyd's claims is presented in the following issues.

XXXVII.
Boyd contends that improper conduct by the jurors deprived him of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights as well as rights guaranteed by Alabama law. He argues that the reliability of the verdict in his case was severely compromised by the consideration of extraneous evidence by several jurors.
E.W.W., an alternate juror, was a member of the Calhoun County volunteer fire department when the victims disappeared. Juror W. was involved in the search for victims in this case, had been to the crime scene, had seen some of the evidence, and was generally knowledgeable about the case. According to Boyd, Juror W. "shared his knowledge with other jurors once the case began." (Appellant's brief at p. 117.) Also according to Boyd, juror B.M. impermissibly consulted a dictionary during the trial. Boyd argues that "jurors did consider extraneous evidenceabout the crime and about legal issuesin deciding Mr. Boyd's fate, and that cannot be countenanced by this or any other court.... Boyd's capital conviction and death sentence cannot stand in light of such evidence." (Appellant's brief at p. 119.)
Boyd filed his Rule 32 petition on July 5, 1990. The above issues were not raised in the petition. The trial court summarily dismissed the petition. On December 4, 1990, the circuit court heard Boyd's motion to reconsider the summary dismissal of the petition. The State conceded at this hearing that Boyd was entitled to be heard on his claims of ineffective assistance of counsel and any claims alleging newly discovered evidence. (Vol.16, R. 4.) At the conclusion of the hearing, the trial court stated that it would take the motion under advisement and "try to get an order out, if possible, by the end of the week." The court stated that if the motion to reconsider was granted and the petition was reinstated, pending discovery motions would be ruled on. The circuit court also noted that an amended Rule 32 petition had been filed and would be taken up if it granted the motion to reconsider. The motion to amend was filed on November 30, 1990, and did not include the above issues. Monday April 1, 1991, at a hearing on the discovery motions, the judge stated that he "thought [he] had entered an order setting aside [his] previous order dismissing the petition" but the record reflected that he had not. (Vol.16, R. 11.) The circuit court stated in regard to granting the motion to reconsider:
"I intended to do so. I was going to set that order [dismissing the petition] aside and allow the petitioner to go forward on the grounds of ineffective assistance of counsel only, and I'll try to work on an order and get that out in the near future. I thought I had already *407 done that, but not having done that, that's my intention in this point."
(Vol.16, R. 12.) Boyd objected "for the record" to the dismissal of those of his claims other than ineffective assistance of counsel. (Vol.16, R. 25.) Boyd filed a second amended petition on July 8, 1994, in which he asserted the above issues in the following fashion:
"110. Mr. Boyd was deprived of a reliable verdict by the fact that members of his jury had extraneous information about the victims and the crime scene and other aspects of this case.
"111. Members of the jury also had connections with law enforcement and investigation efforts in this case that rendered them unfit to sit on petitioner's jury.
"112. The jurors were not forthcoming with this information before they sat in judgment on petitioner's life and liberty."
(Vol.3, C.R.418.) These claims were not presented as newly discovered evidence. There was not even the bare assertion in the petition that these claims were newly discovered evidence. The State filed a motion for partial dismissal in which it addressed certain claims of ineffective assistance of counsel as being insufficiently pleaded. (Vol.3, C.R.439.) The State also filed an answer to Boyd's second amended petition in which it alleged that the above claims were procedurally precluded by Rule 32.2(a)(3) and (a)(5), or in the alternative, should be denied. The day before the Rule 32 hearing the circuit court issued a written order correctly dismissing these claims as precluded by Rule 32.2(a) and subject to summary dismissal pursuant to Rule 32.7(d). Immediately preceding the Rule 32 hearing, the trial court conducted a prehearing conference. At this hearing the presiding judge asked what witnesses the defense was going to call. Boyd's counsel stated that several jurors would be called, because "We have a claim in here that there was some misconduct on the part of the jurors." (Vol.16, R. 94.) The circuit court stated that it would not hear arguments concerning this issue because it had dismissed that issue by written order the previous day. (Vol.16, R. 95.)
These issues were not pleaded as newly discovered facts and were therefore subject to the procedural bar pleaded by the State and accepted by the circuit court. The circuit court's ruling finding this claim precluded on procedural grounds was not error.
Having received the circuit court's order at the prehearing conference, Boyd filed a motion to reconsider. This motion did not allege the claims presented newly discovered facts.[13] This motion was properly denied.
During the hearing Boyd requested that the circuit court hear his proffer through the witness as to what the testimony would have been so that there would be a full record for appeal. The trial court denied the request. (Vol.16, R. 126.) Boyd alleged that this was error. Because the issue had been procedurally precluded it was not properly before the circuit court. Therefore, the trial court did not error in refusing to hear the proffer.

XXXVIII.
Boyd contends on appeal that it was reversible error for the State to withhold evidence that he says was exculpatory as to guilt and punishment. According to Boyd, the State withheld, after request by the defense, the lunacy report on Robert Milstead generated by the staff at the Taylor Hardin Secure Medical Facility. Boyd argues that this report was discoverable Brady material and that refusing to disclose it was clearly error. According to Boyd, the report revealed that Milstead was in touch with reality and that he suffered *408 from adult antisocial personality disorder. Both of these findings, according to Boyd, would have led the jurors to see Milstead as an adult with strong criminal tendencies and not as a young innocent follower of Boyd as he portrayed himself on the witness stand, and it would have been important for jurors to know that mental disease did not diminish Milstead's criminal intent or responsibility. Also, according to Boyd, this evidence would have been critical for the judge to have and the defense to exploit at sentencing.
Boyd also argues that in addition to the lunacy report, State investigators had information that Tony Gathye, a banker seeking to collect on a debt, had gone to Boyd's home shortly after the murders and had seen Milstead and Boyd together. It was Gaythe's opinion that Milstead was so irritated and angry, that Boyd suggested that Gathye leave their presence. Gathye was interviewed by the police at the time about his knowledge and impressions. According to Boyd: "Combined with the undisclosed lunacy report, Tony Gathye's commentary would have been critical to establishing that it was Milstead and not petitioner who was the angry, impulsive actor between the two." (Appellant's brief at page 122.)
This claim was presented to the circuit court in Boyd's second motion to amend his petition as follows:
"70. The prosecution deliberately withheld information about deals made with key witnesses such as Robert Milstead and Kenny Surrett and other information about witnesses and otherwise concealed material necessary to an adequate defense and mitigation case in violation of the trial court's discovery orders and the United States Constitution. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). This information includes but is not limited to the Lunacy Commissions Report on codefendant Robert Milstead to which petitioner sought access prior to trial (R. 155), the full statements of witnesses such as Sharon Johnson and Kenny Surrett, the identity of potentially exculpatory witnesses such as Tony Gathye, and other information."
(Vol.3, C.R.409.)
The written order denying this claim stated that it was precluded under Rule 32.2(a) and was subject to summary dismissal under Rule 32.7(d), Ala.R.Crim.P., because it was not sufficiently specific. (Vol.3, C.R.498-99.) Boyd did not plead in his petition that this claim was based on newly discovered evidence and he did not allege how the evidence was exculpatory. Based on the pleading before the court, we find no error with this ruling. Therefore, the trial court correctly ruled that this claim was precluded and it was insufficiently pleaded to entitle Boyd to relief. See, XXXVII. We note that at the prehearing conference when the circuit court refused to hear this claim defense counsel stated that "Rule 32 does recognize newly discovered evidence as a claim that is cognizable under Rule 32." (Vol.16, R. 93.) However, prior to this time, the claim had not been couched as newly discovered evidence.

XXXIX.
Boyd contends on appeal that he is entitled to a new trial because, he says, newly discovered evidence shows both 1) that the key evidence used to convict him was perjured, and 2) that the trial court was biased against him.

XXXIX-A.
Boyd contends on appeal that the testimony given by codefendant Robert Milstead was perjured. According to Boyd, Milstead's testimony at trial was that Boyd was the leader of the two and that Boyd murdered Evelyn Blackmon and Fred Blackmon. Also according to Milstead, Boyd struck the victims with sticks, tried to break Evelyn Blackmon's back *409 with an ax, and made a sexually provocative comment about Evelyn Blackmon during the incident. According to Boyd, it was Milstead's testimony that provided evidence that the murders were heinous, atrocious, or cruel.
In his second amended Rule 32 petition Boyd asserted the following in paragraph 73 as prosecutorial misconduct: "The prosecution made use of testimony by critical witnesses such as Robert Milstead and Kenny Surrett which it knew or should have known was false." (Vol.3, C.R.410.) At the prehearing hearing, defense counsel stated that Robert Milstead was a witness on "a claim in the petition regarding false evidence by Mr. Milstead." (Vol.16, R. 96.)
This claim was presented to the circuit court as a claim alleging prosecutorial misconduct. It was presented on appeal as the discovery of perjured testimony. Boyd has raised an issue on appeal for the first time. Therefore it is not preserved for review. Wilkerson v. State, 686 So.2d 1266 (Ala.Cr.App.1996).
Moreover, this claim was not pleaded as newly discovered facts. See Part XXXVII.

XXXIX-B.
Boyd contends on appeal that the judge who presided over his trial and sentencing was himself committing crimes at that time and was seeking to avoid detection by the district attorney. Boyd argues that the judge needed to stay in the district attorney's good graces and he was therefore biased against Boyd and unfit to preside over his case. According to Boyd, the judge began committing insurance fraud in the early 1980s and that activity continued for seven years. Boyd states that this judge resigned because he was facing trial in the Alabama Court of the Judiciary. According to Boyd: "Yet given the pervasiveness of his criminal activity over the years and the `obvious trail' he left, he must have feared such prosecution. Thus he had great reason to fear and to please the people who could send him to prison if they discovered himi.e., the office of the District Attorney of Calhoun County." (Appellant's brief at page 125.)
In his second amended Rule 32 petition Boyd asserted in paragraph 136 as a ground supporting his claim that it was improper for the trial court to impose a sentence of death upon Boyd: "The trial court's imposition of a death sentence resulted from the personal, political, and legal circumstances and considerations of the trial judge." (Vol.3, C.R.423.) As presented in his petition and on appeal, this claim is precluded because it was not sufficiently pleaded. Moreover, it did not present newly discovered facts and was subject to preclusion. See Part XXXVII.

XL.
Boyd contends that it was error for the circuit court to exclude his evidence and to refuse to consider the merits of most of the claims he presented in his petition and amended petitions. We have addressed the alleged errors and on each error we have found adversely to Boyd. Further discussion is not warranted.
For the reasons stated above, we conclude that the circuit court properly denied Boyd's Rule 32 petition.
MEMORANDUM OF DECEMBER 18, 1998, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED; APPLICATION FOR REHEARING OVERRULED.
LONG, P.J., and McMILLAN, BASCHAB, and FRY, JJ., concur.
NOTES
[1] A complete rendition of the facts appears in Boyd v. State, 542 So.2d 1247 (Ala.Cr.App. 1988). However, a reprint of those facts can been found in note 9 of this opinion.
[2] Hereafter, the Rule 20, Ala.R.Crim.P.Temp., petition will be referred to as the Rule 32 petition.
[3] The record in this case includes the original twenty volume clerk's record (C.R.) and hearing transcript (R.), filed on November 20, 1997. Two supplemental records were filed. A three volume supplemental record was filed on January 9, 1998, and a six volume supplemental record filed March 5, 1998. Citations to the original record are designated by the volume (Vol.) number and the page number to either the clerk's record or the hearing transcript. Citations to the supplemental records are designated by the date, volume number, and page number. Citations to the record on direct appeal are designated as such.
[4] The Roman numerals used in section headings in this opinion correspond to the Roman numerals in Boyd's brief to this Court. The issue or issues we treat in Part I.A. of this opinion are raised in Part I.A. of Boyd's brief. In some parts of this opinion we have treated two or more issues, and in those parts we use both section numbers as a heading, e.g. "I.B. and V."
[5] This characterization of his horrible childhood was presented at the Rule 32 hearing by the following witnesses, whom Boyd asserts trial counsel should have called as witness at the sentencing phase of his trial: Jan Vogelsang, a licensed social worker and psychotherapist; Cindy Pierce, his sister (she also testified at sentencing phase); Bill Whatley, a retired Anniston police officer who had investigated domestic disputes at Boyd's childhood home; Roy C. Snead, Jr., Sheriff of Calhoun County, who was familiar with William Hardy Boyd Jr.'s (Boyd's father), arrest record and alcoholism; Kathy Gurley, who would have testified to the circumstances surrounding Boyd's childhood; Charles Pierce, Jr., Boyd's brother-in-law, who would have testified to the circumstances surrounding Boyd's childhood; Joseph Burton, a forensic pathologist from Georgia who reviewed material in Boyd's case; Carl Majeskey, a consultant for lawyers and insurance companies in the field of firearms; and Louis Mulray Tetlow, a licensed clinical psychologist. Boyd also presented records from the Department of Human Resources, hospitals, and courts to support the oral testimony.
[6] Psychosocial assessment was defined as "the procedure that is used to gather voluminous information and to use that information to try and explain human behavior and then design a plan in some situations to try to change that behavior." Vol. 17 at 293.
[7] Boyd's complaint that the trial court severely handicapped his penalty-phase presentation by allowing only 40 minutes between the guilt phase and the penalty phase is without merit. He stated that he asked the trial court for more time to prepare but that the trial court refused. We note that refusing to allow more time was not error. Section 13A-5-45(a), Ala.Code 1975, states that when the sentence hearing is conducted before the trial jury, "[t]he sentence hearing shall be conducted as soon as practical after the defendant is convicted." See, Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App.1994) ("The appellant further contends that his counsel's performance was ineffective because, he says, counsel failed to investigate in preparation for the penalty stage of the proceedings and failed to call additional witnesses. The record reflects that the guilt phase was completed on Saturday. Counsel asked for a continuance until Monday to have more time to prepare for the penalty phase. The court polled the jury and after ascertaining that the members of the jury wished to proceed, the court continued the proceedings without delay." We found no error in Fortenberry, stating that additional witnesses can always be called and that under the facts, the defendant suffered no prejudice.).
[8] Booth "prohibited consideration of a victim's family members' characterization and opinions about the crime, the defendant, and the appropriate sentence during the sentencing phase of a capital murder trial." Gathers extended Booth to include a prosecutor's statements made at sentencing about the personal qualities of the victim.
[9] The pertinent part of Milstead's testimony at trial was as follows.

"Milstead drove the car and Mr. Blackmon sat beside him in the front seat. The appellant and Mrs. Blackmon sat in the backseat. Milstead drove across the Coosa River to Ohatchee (in St. Clair County) and drove down a dirt road. At some point, the appellant, Milstead, and Mrs. Blackmon got out of the car and walked to a clearing behind a brush pile. The appellant then told Mrs. Blackmon to sit down. He tied her hands and feet, gagged and blindfolded her. After talking to Mrs. Blackmon, the appellant hit her on the nose with a stick and then hit her on the forehead. Mrs. Blackmon screamed and the appellant tried to choke her with a cloth. The appellant then took the .22 gun, muffled it with the cloth and shot Mrs. Blackmon. The shot did not kill her so the appellant took the .25 gun from Milstead and shot Mrs. Blackmon in the back and head. They covered Mrs. Blackmon's body up and left.
"Milstead and the appellant then took Mr. Blackmon back across the river (into Calhoun County) and parked on a dirt road. The appellant told Mr. Blackmon to get out of the car. The appellant hit Mr. Blackmon on the head with a stick. This hit broke the taillight on Mr. Blackmon's car. Then the appellant took a piece of cloth and started choking Mr. Blackmon. Mr. Blackmon struggled and stabbed the appellant with a stick. The appellant took out the .25 gun and put it to Mr. Blackmon's throat. Mr. Blackmon begged the appellant not to shoot him and said he could get $50,000 for him. The appellant told Mr. Blackmon it was too late and shot him in the chest and neck. Milstead and the appellant then put Mr. Blackmon's body in the trunk. Milstead and the appellant then drove Mr. Blackmon's car to the Piggly Wiggly grocery store lot and parked it there. They went to Milstead's father's house and washed up and changed clothes. Later that night, Milstead and the appellant went back and picked up Mr. Blackmon's car and drove it to a boat ramp on the Coosa River. The appellant rolled the windows of the car down and rolled the car down the ramp into the river. After a few minutes, the car sank. They threw the two pistols in a creek that night.
"The next morning, Milstead and the appellant went back to the place where they left Mrs. Blackmon's body. They were going to put her body in a barrel that Milstead bought the previous afternoon. The appellant said the body was too stiff and he took Milstead's ax and tried to cut Mrs. Blackmon's body in half. He then took the body and broke Mrs. Blackmon's back. The two then put her body into the barrel with some cement blocks and rocks. The appellant cut some holes in the barrel with the ax. Milstead and the appellant then rolled the barrel into the river and it sank.
"The appellant told Milstead to tell the police a story about the mafia if he was questioned concerning the Blackmons' deaths. He said that Milstead would wind up like Mrs. Blackmon if he said anything to the police about him.
"Milstead testified that he had a conversation with Sharon Johnson on the day the murders occurred. Milstead told Johnson that he and the appellant kidnapped the Blackmons and that the appellant killed them."
Boyd v. State, 542 So.2d 1247, 1253-1254 (Ala.Cr.App.1988).
[10] Today, Rule 23.2(c)(1), Ala.R.Crim.P., "requires the jury to specify the particular counts on which it finds the defendant either guilty or not guilty." Knotts, supra.
[11] In a post-hearing motion to reconsider, Boyd submitted proffers and affidavits from witnesses to support his claims.
[12] However, if the State fails to dispute a factual allegation contained in the petition, then that allegation is taken as true.
[13] Boyd did plead that, "Mr. Williams was not forthcoming with this information during voir dire." (Vol.3, R. 518.) However, this assertion is insufficient to support a claim of newly discovered facts.