SHAW, Judge,
dissenting.
In Ex parte Frazier, 562 So.2d 560, 565 (Ala.1989), the Alabama Supreme Court, quoting Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), stated: “ ‘Court proceedings are held for the solemn purpose of endeavoring to ascertain the truth which is the sine qua non of a fair trial. Over the centuries Anglo-American courts have devised careful safeguards by rule and otherwise to protect and facilitate the performance of this high function.’ ”
Based on the evidence presented to it, a jury concluded on September 17, 1986, that Anthony Ray Hinton was guilty of the execution-style capital murders of John Davidson and Thomas Wayne Vason. That same jury recommended that Hinton be sentenced to death, and the trial court, accepting that recommendation, did so. Before filing this Rule 32, Ala.R.Crim.P., petition on August 15, 1990, the fairness of Hinton’s trial had been reviewed and confirmed not only by this Court, but also by the Alabama Supreme Court and the United States Supreme Court. Now, over 20 years after these murders, and almost 18 years after this Court first reviewed Hinton’s case on direct appeal, we have been asked once again to examine Hinton’s trial, this time through the mechanism of post-conviction review — one of the safeguards put in place to ensure the fairness of criminal prosecutions.[30]
After carefully reviewing the briefs and after examining both the record on direct appeal and the Rule 32 record, I am satisfied that there is only one issue that has been properly raised and that merits this Court’s intervention — whether, based on the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Hinton’s trial counsel rendered ineffective assistance by retaining and proceeding to trial with an unqualified firearms witness.
I note, initially, that I am concerned that confidence in the outcome of Hinton’s trial was seriously compromised by the failure of trial counsel to seek the additional funding to which he was entitled under § 15-12-21(d), Ala.Code 1975. After all, it was essential from a defense perspective that trial counsel retain a qualified firearms and toolmarks expert to testify with respect to what the parties agree was the crucial issue at trial — whether the bullets found at the crime scenes could be connected to the gun found at the residence of Hinton’s mother. I also seriously question whether this case, in its present posture, will be able to withstand the additional levels of scrutiny in both state and federal courts.
However, I feel that it is premature to reverse the circuit court’s[31] judgment because it does not appear to me, after examining the record on direct appeal and the Rule 32 record, that a specific finding as to whether Andrew Payne was a qualified firearms and toolmarks expert has ever been made. Although Payne testified at trial, it is not clear that trial counsel proffered him as an expert in toolmarks examination, and it does not appear that the trial court ever actually ruled that, based on his knowledge, skill, experience, *329 training, or education, Payne was qualified to give authoritative testimony on that subject. Payne testified that he was a civil engineer with a military background primarily in heavy weapons and ordnance and that he had had limited experience during his career in toolmarks examination of handguns. To say that Payne was soundly discredited at trial on cross-examination by the prosecutor would be an understatement. However, prosecutors successfully challenge the credibility of even qualified expert defense witnesses in many cases and for many reasons. Therefore, to me it is not dispositive that the prosecutor successfully challenged Payne’s credibility before the jury. Rather, the dispositive issue is whether Payne was a qualified firearms and toolmarks expert.
The record on direct appeal indicates that Payne’s credibility as a firearms and toolmarks expert was seriously questioned at trial by both Hinton’s trial counsel and by the prosecutor. However, the prosecutor obviously did not challenge Payne’s qualifications to testify as an expert witness, and the trial court never specifically found Payne to be qualified to testify about toolmarks. Likewise, the record of the Rule 32 proceedings also reflects that the circuit court made no specific findings on this question. Although Hinton claimed in his petition that his trial counsel had rendered ineffective assistance by failing to retain a qualified firearms and tool-marks expert, the circuit court addressed the claim as follows:
“b. In paragraph 44 of his petition, Hinton alleges that his trial counsel was ineffective for failing to obtain and present qualified ballistics experts who could have proved that the bullets recovered from the crime scenes were not fired from the gun recovered in his mother’s home. This claim, which was first .raised in the 1998 amended petition as Claim nn, is dismissed for the following reasons:
[[Image here]]
“[T]his claim is dismissed in accordance with Alabama Rule of Criminal Procedure 32.7(d) for failure to state a claim upon which relief may be granted because there is no material issue of fact or law. Hinton alleges that his trial counsel was deficient for not presenting on [sic] evidence that the bullets found at the crime scenes were not fired from the gun found at his mother’s house; however, Hinton’s counsel did put on such testimony. Hinton’s counsel presented the testimony of Andrew H. Payne, Jr., a consulting engineer who studied firearms and projectiles. (T.R. 1571-1667) Mr. Payne has been qualified as an expert ballistics witness for several criminal and civil cases in Alabama. Mr. Payne testified that the type of bullets fired from the gun recovered at Hinton’s mother’s house used a corrosive primer that eventually corroded the toolmarkings inside the barrel of the gun. (T.R. 1616-1617) Mr. Payne further testified that the toolmarkings in this gun had been corroded away and that it would not be possible to make a positive final match between this gun and any expended bullets. (T.R. 1618-1621) In addition, Mr. Payne testified that the bullets from the three crime scenes did not match. (T.R. 1631-1637) Accordingly, the trial record clearly refutes Hinton’s claim that his trial counsel was ineffective for failure to present testimony in rebuttal to the State’s ballistics evidence. For these same reasons, this claim is also dismissed under Alabama Rule of Criminal Procedure 32.3 for failure to meet his burden of proving the facts necessary to warrant relief.
“c. In paragraph 45 of his petition, Hinton alleges that his trial counsel was *330 ineffective for failing to file a motion for continuance when he realized his ballistics expert was not qualified to testify and for failing to seek additional funds to hire a better expert witness. This claim, which is being raised for the first time in this third amended petition, is dismissed for the following reasons:
[[Image here]]
“[TJhis claim is dismissed in accordance with Alabama Rule of Criminal Procedure 32.7(d) for failure to state a claim upon which relief may be granted because there is no material issue of fact or law. Hinton alleges in Paragraph 44 of this petition that a qualified ballistics expert would have testified that the bullets fired at the three crime scenes were not fired by the gun recovered at his mother’s house; however, it is exactly what his ballistics expert testified at trial. (T.R. 1571-1668) Thus, Hinton fails to meet his burden of pleading or proving that his counsel was deficient or how he was prejudiced when the expert chosen by trial counsel testified to what he claims any other ‘qualified’ ballistics expert would have testified. See Boyd v. State, 746 So.2d 364, 375 (Ala.Crim.App.1999) (‘Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable.’). Accordingly, this claim is dismissed. For these same reasons, this claim is also dismissed under Rule 32.3 for failure to meet his burden or proving the facts necessary to warrant relief.”
(C. 1545-50.)
The circuit court characterized the issue' as whether trial counsel had presented evidence indicating that the bullets found at the crime scenes could not have been fired from the gun found at the home of Hinton’s mother and then rejected Hinton’s claim on the ground that Payne had provided favorable testimony. The circuit court did not address directly the issue whether Payne was qualified to be testifying in the first place. Additionally, although the circuit court noted in passing that Payne had “been qualified as an expert ballistics witness for several criminal and civil cases in Alabama” (C. 1547), that statement does not necessarily reflect a finding that Payne was qualified to testify as a toolmarks expert in this case. Moreover, the record on direct appeal calls into question whether this statement is even accurate. At trial, Payne testified as follows:
“Q. You had occasions to testify in court before as a consulting engineer?
“A. Yes, sir; I have a time or two.
“Q. Do you have a judgment about how many times you’ve done that?
“A. No, but it would be in excess of a thousand.
“Q. Now, I’d like to narrow that field of endeavor down, sir, and ask you how many times in the last five years have you testified in court in a criminal case involving firearms and tool marks identification?
“A. I think twice. Not sure about the five years, maybe it was seven years. Eight years.
“Q. And those two times, Mr. Payne, involved shotguns? Once in Montgomery County and once in Jefferson County?
“A. Well, I’m sorry, I just don’t remember but one shotgun case and that was here in Jefferson County. The only other one I’m talking about involved a projectile somewhat similar to what we’re talking about here today.
“Q. And of those two times that you do recall how many times did you testify for the defendant?
*331 “A. For the what?
“Q. For the defense?
“A. None. I was testifying for the accused. Oh, that’s what you call the defendant, that’s right.
“Q. Yes, sir.
“A. Yes, sir; you call it the defendant. In both for the defendant.
“Q. Yes, sir.
“A. Let me — let me correct that a minute.
“Q. Where you received a fee—
“A. No, wait, let me correct that. Once was for the defendant and the one in Opelika, that would be for a plaintiff, not for the defendant.
“Q. That was a civil case?
“A. Well, it was a civil case, yes.
“Q. Had to do with whether or not a gun malfunctioned and someone had a right to sue a firearms company for some type of damages?
“A. No, sir; it was whether a man killed himself or whether he was murdered.
“Q. But you were testifying in a civil suit?
“A. Right.
“Q. Not a criminal case?
“A. That’s correct.”
(Record on Direct Appeal, R. 1654-56.) It is impossible for me to tell from this line of questioning whether Payne was really ever found to be qualified to testify in court as a firearms and toolmarks expert.[32]
If Payne was in fact a qualified firearms and toolmarks expert, even if his qualifications did not necessarily match up with those possessed by the State’s experts, then I would affirm the circuit court’s judgment denying Rule 32 relief. Sorting out conflicting testimony from qualified experts presented at trial is solely within the province of the jury. Rule 82 is not a mechanism by which those convicted of criminal offenses may argue many years after trial that they now have found better expert witnesses that a newly selected jury should, hear. On the other hand, if Payne was not qualified to testify authoritatively as a firearms and toolmarks expert, then, based on the Strickland v. Washington standard, I would have no choice but to reverse the circuit court’s judgment denying Rule 32 relief on the ground that trial counsel had rendered ineffective assistance to Hinton. It goes without saying that, with knowledge that sufficient funds were available to have a qualified firearms and toolmarks expert, no reasonable criminal defense lawyer would seek out and hire an unqualified firearms witness. Such a lawyer would be charged with the knowledge that in a situation where that witness’s testimony was crucial to the pivotal issue in the case, the witness would be subjected to a withering cross-examination that could ultimately result in the complete impeachment of his or her credibility. In addition, based on the evidence presented at trial, if the testimony or the only physical evidence that connected Hinton to the capital murders was, in fact, presented by a witness who was not competent to render an opinion, then it was useless to him in rebutting the opinions of the State’s experts, thereby resulting in prejudice under the Strickland v. Washington standard.
I think that it is also appropriate to note the State’s argument on appeal that Payne *332 was a qualified firearms and toolmarks expert and that, even if he was not the best witness that could have been retained, he was the best witness that trial counsel could afford. As the State noted on page 70 of its brief, “The reason [trial counsel] hired Mr. Payne instead of another ‘renowned’ expert with whom he spoke was the fee limitation — not his diligence in searching for an expert.” The irony of the State’s first argument is that it is exactly the opposite of the argument the prosecutor made at trial — that Payne was a charlatan and not an expert with regard to firearms and toolmarks examination.[33] And, of course, in light of § 15 — 12—21(d), the State’s second argument misses the point completely.
This is an extremely important case, not only for Hinton and the families of the victims of these horrendous crimes, but also for the people of Alabama, who must have confidence that the criminal justice system is capable of achieving its ultimate purpose — the fair conviction and punishment of the guilty and the protection of the innocent. It is regrettable that the wheels of justice have turned slowly in this case, from the perspectives of both Hinton and the families of the victims. However, as I noted in my special writing in Dowdell v. State, 854 So.2d 1195 (Ala.Crim.App.2002), the orderly processing of cases through the courts is an important value, but it is not the end in itself.
For these reasons, I would remand this case to the circuit court for a specific finding as to whether Andrew Payne was indeed qualified to testify as an expert firearms and toolmarks examiner based on his knowledge, skill, experience, training, or education. Rule 32.9(d), Ala.R.Crim.P., requires that if an evidentiary hearing is conducted on a Rule 32 petition, “[t]he court shall make specific findings of fact relating to each material issue of fact presented.” A statement of the basis of a circuit court’s decision is essential to afford the appellant due process. See, e.g., Dedeaux v. State, 976 So.2d 1045 (Ala.Crim.App.2005) (remanded for findings on ineffective-assistance claim); Crum v. State, 911 So.2d 34 (Ala.Crim.App.2004) (same); Cain v. State, 876 So.2d 1178 (Ala.Crim.App.2003) (same). I would also authorize the circuit court to hold another evidentia-ry hearing should it deem it necessary. Neither the parties nor the members of this Court can agree as to whether Payne was qualified to testify. Because, in my view, Hinton’s ineffective-assistance claim turns on whether Payne was a qualified firearms and toolmarks expert, that issue should first be addressed by the circuit court. Until that is done, I do not believe that this case is in the right posture for us to decide one way or the other whether the circuit court exceeded its discretion in denying Rule 32 relief.

. This case was not orally argued and submitted to this Court until November 15, 2005.

. The same judge presided over both the . trial and the Rule 32 proceedings. For clarity, I will refer to the "trial court" when addressing the trial proceedings and to the "circuit court” when addressing the Rule 32 proceedings.

. See also Barnes v. State, 429 So.2d 1114, 1118 (Ala.Crim.App.1982), wherein this Court noted:
"After the State rested, the defense called Andrew Payne to the stand. Mr. Payne was retired from the Air Force where he worked with weapons and continued to do so as a hobby. He was then employed as a consulting engineer.”

. The State’s argument on appeal consists of a single-sentence reference to the circuit court’s order: "First, as noted by Judge Garrett, Mr. Payne is a 'consulting engineer who studied firearms and projectiles’ and has 'been qualified as an expert ballistics witness' on numerous occasions.” (Page 69 of State’s brief.)